1               UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF OHIO
2                    WESTERN DIVISION

3   United States of America,-      Docket No. 3:15-cr-024-1
                             -
4       Plaintiff,           -      Toledo, Ohio
                             -      June 27 2016
5          v.                -      Sentencing
                             -
6   Aroldo Rigoberto         -
    Castillo-Serrano,        -
7                            -
        Defendant.           -
8   -------------------------------

9            TRANSCRIPT OF SENTENCING HEARING
          BEFORE THE HONORABLE JAMES G. CARR
10             UNITED STATES DISTRICT JUDGE.

11  APPEARANCES:

12  For the Plaintiffs:  United States Attorneys' Office
                         By: Chelsea S. Rice
13                       Suite 400
                         801 Superior Avenue, W
14                       Cleveland, OH 44113
                         (216) 622-3752
15
                         U.S. Department of Justice
16                       By:  Dana Mulhauser
                         PHB 5130
17                       950 Pennsylvania Avenue
                         Washington, DC 20530
18                       (202) 305-0007

19  For the Defendant:   David Lee Klucas
                         1900 Monroe Street
20                       Toledo, OH 43624
                         (419) 255-1102
21
    Court Reporter:      Tracy L. McGurk, RMR, CRR
22                       1716 Spielbusch Avenue
                         Toledo, Ohio 43604
23                       (419) 213-5520

24  Interpreter:         Ellen Donohue

25  Proceedings recorded by mechanical stenography,
    transcript produced by notereading.

1      (Commenced at 11:32 a.m.)

2      THE COURT:  I think you're all aware I

00:00:03  3  raised the question of whether I can unseal that. I've

00:00:06  4  asked Myrna.  She didn't see any reason why I can't, the

00:00:09  5  offense conduct part, and I forgot that David was here

00:00:14  6  while that went on.  And that's why I called him up to

00:00:18  7  fill him in, because I've been here since 9:30.  So you

00:00:23  8  have thought about it?

00:00:25  9      MS. MULHAUSER:  Your Honor, we reviewed the

00:00:26  10  Pretrial Services -- the Presentence Report.  We have no

00:00:30  11  objection to unsealing that offense conduct.  Also Ana

00:00:35  12  Angelica Pedro Juan's Plea Agreement is already

00:00:38  13  unsealed.  So all of that is already public record.

00:00:42  14  With respect to the victim impact statements, we would

00:00:45  15  like to have more time to review those.

00:00:47  16      THE COURT:  That's fine.  The flavor of them

00:00:51  17  is in the offense conduct statement.  We can accomplish

00:01:01  18  what I'm trying to accomplish.  So we don't have to

00:01:05  19  simply sit here and wonder what we're talking about.

00:01:08  20  I'll ask the same thing of Merle.

00:01:14  21      Myrna, if nobody has an objection to the

00:01:30  22  disclosure of those paragraphs, the Offense Conduct, is

00:01:34  23  it okay with you?

00:01:35  24      I'll make a copy of that segment and simply

00:01:40  25  file it.  I'll call it Government's Exhibit C just for

| | | |
|---|---|---|
| 00:01:44 | 1 | the record so we know what we're talking about.  This is |
| 00:01:48 | 2 | son Castillo-Serrano right now.  When Merle comes down |
| 00:01:52 | 3 | we'll ask Merle. |
| 00:01:55 | 4 | MR. KLUCAS:  I should put my consent on the |
| 00:01:57 | 5 | record.  So on behalf of Mr. Castillo-Serrano, we don't |
| 00:02:00 | 6 | have any objection to the relevant conduct portion of |
| 00:02:03 | 7 | the Plea Agreement. |
| 00:02:04 | 8 | THE COURT:  What is the offense -- what's |
| 00:02:06 | 9 | the technical -- |
| 00:02:08 | 10 | MR. KLUCAS:  The Offense Conduct in the PSR. |
| 00:02:12 | 11 | THE COURT:  Well, the Plea Agreement in your |
| 00:02:15 | 12 | case is -- |
| 00:02:18 | 13 | MS. MULHAUSER:  No, no.  Her plea agreement |
| 00:02:20 | 14 | is public. |
| 00:02:23 | 15 | MR. KLUCAS:  That portion only. |
| 00:02:40 | 16 | THE COURT:  We'll redact the case agent and |
| 00:02:44 | 17 | counsel's name. |
| 00:35:14 | 18 | (Recess taken.) |
| 00:37:11 | 19 | THE COURT:  I'm reviewing what's been marked |
| 00:37:14 | 20 | Court's Exhibit B. |
| 00:38:22 | 21 | Mr. Klucas, there's been evidence provided. |
| 00:38:31 | 22 | You are not to provide a copy of this to him. |
| 00:38:35 | 23 | MR. KLUCAS:  He hasn't seen it. |
| 00:38:36 | 24 | THE COURT:  I'm going to place it under |
| 00:38:39 | 25 | seal. |

| | | |
|---|---|---|
| 00:39:33 | 1 | The reference, Mr. Klucas, to Defendant's |
| 00:39:35 | 2 | attorney in the document; is it an attorney in |
| 00:39:38 | 3 | Guatemala? |
| 00:39:39 | 4 | MR. KLUCAS:  It is. |
| 00:39:40 | 5 | THE COURT:  I assumed that. |
| 00:44:19 | 6 | THE CLERK:  3:15-CR-24-1, United States of |
| 00:44:24 | 7 | America versus Aroldo Castillo-Serrano.  Matter called |
| 00:44:29 | 8 | for continued sentencing. |
| 00:44:31 | 9 | THE COURT:  Let the record show the |
| 00:44:32 | 10 | defendant is present in court with his attorney, David |
| 00:44:34 | 11 | Klucas.  The government is represented by AUSA -- I'm |
| 00:44:41 | 12 | sorry; your name? |
| 00:44:41 | 13 | MS. MULHAUSER:  Dana Mulhauser for the |
| 00:44:45 | 14 | United States. |
| 00:44:45 | 15 | THE COURT:  Your colleague is? |
| 00:44:47 | 16 | MS. MULHAUSER:  My colleague is Chelsea Rice |
| 00:44:49 | 17 | with U.S. Attorney's Office in Cleveland, Ohio; and Matt |
| 00:44:52 | 18 | Komar, special agent for the FBI. |
| 00:44:54 | 19 | THE COURT:  Agent, what is your duty |
| 00:44:56 | 20 | station, just for the record, or where was it at the |
| 00:44:59 | 21 | time of this investigation? |
| 00:45:02 | 22 | MR. KOMAR:  Mansfield, Ohio. |
| 00:45:05 | 23 | THE COURT:  I realize I might have already |
| 00:45:07 | 24 | covered that. |
| 00:45:09 | 25 | Also present is Ms. Myrna Greenwood who, |

00:45:12  1  quite candidly, has done a wonderful service on all

00:45:19  2  these cases.

00:45:20  3          Counsel, have you each received and reviewed

00:45:23  4  the Presentence Report?  If so, do you have objections

00:45:26  5  other than those previously made?  If not, are you

00:45:28  6  prepared to proceed with sentencing?

00:45:30  7          MS. MULHAUSER:  The United States does not

00:45:31  8  have objections other than the ones previously made.

00:45:34  9          MR. KLUCAS:  Likewise, Your Honor.  Other

00:45:35  10  than the objections already made, we have no new

00:45:38  11  objections, and we're prepared to proceed.

00:45:43  12          THE COURT:  Remind me.  I'm sorry; I

00:45:46  13  neglected to check.  Have I ruled on any of the

00:45:50  14  objections?

00:45:51  15          MS. MULHAUSER:  Your Honor, there are

00:45:52  16  several that have been ruled on, and several that

00:45:54  17  remain.  So under consideration at the last hearing was

00:45:57  18  whether the vulnerable victim enhancement applied and

00:46:01  19  whether the large number applied.  If I recall

00:46:04  20  correctly, Your Honor found in favor of the United

00:46:06  21  States with both of those.

00:46:07  22          There remain several enhancements that

00:46:09  23  neither side requested in the Plea Agreement that

00:46:11  24  nevertheless Probation found that Your Honor has not

00:46:13  25  ruled on.

```
00:46:14   1              THE COURT:  Okay.  Mr. Klucas, is that
00:46:17   2   correct?
00:46:17   3              MR. KLUCAS:  That's my recollection, Judge.
00:46:19   4   I had a minute to talk to Ms. Mulhauser.
00:46:21   5              THE COURT:  And there is a pending
00:46:22   6   Government motion.  Have I ruled on that?
00:46:25   7              MS. MULHAUSER:  Your Honor, I believe there
00:46:26   8   are certain items still pending on that that we may want
00:46:29   9   to discuss at the bench before that's ruled on.
00:46:32  10              THE COURT:  And then, counsel, why don't you
00:46:34  11   approach for a moment, please.
00:46:38  12              Myrna, come around, please.
          13              (The following discussion was had at the
          14   bench outside the hearing of the courtroom and was
          15   sealed by order of the Court:)
          16                          *  *  *
          17              SEALED PORTION OF TRANSCRIPT
          18
          19
          20
          21
          22
          23
          24
          25
```



SEALED PORTION OF TRANSCRIPT

1                    SEALED PORTION OF TRANSCRIPT

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1    SEALED PORTION OF TRANSCRIPT

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



1                SEALED PORTION OF TRANSCRIPT

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25



SEALED PORTION OF TRANSCRIPT

SEALED PORTION OF TRANSCRIPT

| | | |
|---|---|---|
| 00:55:58 | 1 | (End of sealed portion of transcript.) |
| 00:56:19 | 2 | THE COURT:  Simply as the starting point for |
| 00:56:23 | 3 | today's proceedings, the Guideline Base Offense Level is |
| 00:56:29 | 4 | a 34; Criminal History Category of II, and there are a |
| 00:56:33 | 5 | number of other matters I have to resolve, but a 34, |
| 00:56:41 | 6 | Level II, is a 168 to 210 Guideline Range. |
| 00:56:47 | 7 | Counsel, do you agree with that? |
| 00:56:50 | 8 | MS. MULHAUSER:  Yes, Your Honor.  Does that |
| 00:56:50 | 9 | mean that you are making rulings as to number 61, 62 |
| 00:56:53 | 10 | and -- |
| 00:56:56 | 11 | THE COURT:  As presently written, that's my |
| 00:56:59 | 12 | understanding.  And I understand there are various |
| 00:57:03 | 13 | unresolved concerns. |
| 00:57:07 | 14 | MS. MULHAUSER:  If those are still |
| 00:57:08 | 15 | unresolved, the Government is in agreement with that as |
| 00:57:11 | 16 | a calculation. |
| 00:57:12 | 17 | THE COURT:  I'm saying taking what's in |
| 00:57:14 | 18 | front of me, running numbers, I come up with a 34 and |
| 00:57:17 | 19 | II, subject to further discussion one way or the other. |
| 00:57:21 | 20 | MS. MULHAUSER:  The Government is in |
| 00:57:22 | 21 | agreement. |
| 00:57:29 | 22 | THE COURT:  Correct, Myrna, according to |
| 00:57:31 | 23 | your computations? |
| 00:57:32 | 24 | MS. GREENWOOD:  Correct. |
| 00:57:34 | 25 | THE COURT:  I want a baseline for what |

00:57:36  1    remains unresolved.

00:57:48  2              I have Government's Exhibit -- Court's

00:57:52  3    Exhibit B.

00:57:54  4              MR. KLUCAS:  Is that how you're referring to

00:57:56  5    the report, so I can make a note?

00:57:58  6              THE COURT:  Yes.  The document they received

00:58:01  7    this morning relative to the efforts being undertaken to

00:58:06  8    have the property restored.  I'll refer to it as Court

00:58:12  9    Exhibit Number 2.  That will be placed under seal

00:58:17  10   because of the nature of much of the material contained

00:58:22  11   in there.  So that -- although the offense conduct

00:58:27  12   portion will be made public, this exhibit will not be

00:58:32  13   made public.

00:58:34  14              Now let's turn to the objections.  Let's

00:58:37  15   start with the Government, whether it has any objections

00:58:39  16   to any of these enhancements or other computations.

00:58:44  17              MS. MULHAUSER:  Your Honor, are we

00:58:45  18   discussing Court Exhibit 2, or are we discussing --

00:58:49  19              THE COURT:  We're discussing in the

00:58:50  20   Presentence Report.

00:58:51  21              MS. MULHAUSER:  In the Presentence Report.

00:58:53  22   Thank you, Your Honor.

00:58:54  23              The Government is bound by the Plea

00:58:57  24   Agreement which states that we are not asking for these

00:59:00  25   enhancements.  We are simply asking for a ruling from

| | | |
|---|---|---|
| 00:59:02 | 1 | Your Honor on whether they apply.  And we would note |
| 00:59:05 | 2 | that similar enhancements were found to apply in a |
| 00:59:08 | 3 | co-defendant's sentencing that occurred very recently. |
| 00:59:12 | 4 | THE COURT:  That being so, obviously I'm |
| 00:59:16 | 5 | inclined to apply them here.  But, Mr. Klucas, go ahead. |
| 00:59:19 | 6 | MR. KLUCAS:  I wasn't aware of what the |
| 00:59:20 | 7 | arguments pro or con were in the preceding sentencing. |
| 00:59:24 | 8 | I think I missed that part.  I would indicate that, like |
| 00:59:31 | 9 | the Government, we believe the plea agreement should |
| 00:59:35 | 10 | dictate the scope of the Court's sentencing range.  The |
| 00:59:39 | 11 | things that were found in the plea agreement |
| 00:59:41 | 12 | regarding -- I'm sorry, in the PSI regarding the |
| 00:59:45 | 13 | specific offense characteristics, particularly paragraph |
| 00:59:49 | 14 | 61 -- well, let me start with 61, was a subject of some |
| 00:59:55 | 15 | dispute, debate, and animated discussion between defense |
| 01:00:00 | 16 | and the government prior to the Plea Agreement being |
| 01:00:02 | 17 | reached.  The Government was willing to engage in plea |
| 01:00:09 | 18 | negotiations in a Plea Agreement that did not embrace |
| 01:00:12 | 19 | that specific offense characteristic.  Quite frankly, |
| 01:00:15 | 20 | I'm not 100 percent that there was credible evidence |
| 01:00:19 | 21 | disclosed to support that offense characteristic.  And |
| 01:00:24 | 22 | because there wasn't, at least in my opinion, credible |
| 01:00:27 | 23 | evidence disclosed to support that, we would object. |
| 01:00:31 | 24 | THE COURT:  I disagree, and that enhancement |
| 01:00:36 | 25 | will be applied.  Objection overruled.  I find it |

| | | |
|---|---|---|
| 01:00:41 | 1 | credible.  I note the Defendant has pled guilty to a |
| 01:00:44 | 2 | conspiracy, and that among other charges. |
| 01:00:50 | 3 | Go ahead.  Next? |
| 01:00:54 | 4 | MR. KLUCAS:  The next one that I have was |
| 01:00:57 | 5 | 64, but I believe the Court ruled on that already. |
| 01:01:00 | 6 | MS. MULHAUSER:  Your Honor, if I may, |
| 01:01:01 | 7 | there's also 62.  So 62, which is 2H4.1(b)(3)(A), which |
| 01:01:13 | 8 | is the length of time which the victims were held.  So |
| 01:01:17 | 9 | according to the Plea Agreement, that should be a |
| 01:01:20 | 10 | plus-two for between 180 days and one year of servitude. |
| 01:01:25 | 11 | The Presentence Report found a plus-three for more than |
| 01:01:28 | 12 | one year.  I would point Your Honor to the victim impact |
| 01:01:32 | 13 | statement of Victim Number 1 that Your Honor received |
| 01:01:35 | 14 | today.  Again, we are asking only for what is in the |
| 01:01:40 | 15 | Plea Agreement. |
| 01:01:41 | 16 | THE COURT:  Right.  And just tell me, |
| 01:01:43 | 17 | please, what does that -- I'll take a look at it right |
| 01:01:48 | 18 | now. |
| 01:01:49 | 19 | MS. MULHAUSER:  I'll point Your Honor to the |
| 01:01:51 | 20 | beginning of Paragraph 4. |
| 01:02:01 | 21 | THE COURT:  I'm looking at what's been |
| 01:02:03 | 22 | numbered at page 1 of the first victim impact statement. |
| 01:02:11 | 23 | MS. MULHAUSER:  The one that says at the top |
| 01:02:12 | 24 | Victim Impact Statement of Victim 1. |
| 01:02:27 | 25 | THE COURT:  I'm sorry.  I'm having some |

01:02:29  1    trouble.  What page is that on?

01:02:35  2              MS. MULHAUSER:  Your Honor, I can approach

01:02:37  3    with it if you'd like me to.  I don't know, either page

01:02:40  4    number --

01:02:41  5              THE COURT:  I'm having -- I have some

01:02:43  6    reading problems.  Maybe if somebody can help me out

01:02:45  7    here.

01:02:46  8              MS. MULHAUSER:  I can also read it to Your

01:02:48  9    Honor.

01:02:48  10             THE COURT:  If you want to read it in the

01:02:50  11   record, that's fine.  Let's do it that way.

01:02:52  12             MS. MULHAUSER:  The Victim Impact Statement

01:02:55  13   of Victim 1.  This is signed on June 1, 2016, and there

01:02:59  14   is a signature from a certified -- from an individual

01:03:05  15   who translated it from Spanish to English saying it was

01:03:09  16   read back to the victim.

01:03:11  17             "Dear Honorable Judge, I am writing to you

01:03:13  18   to describe how I have been harmed by the people you are

01:03:16  19   sentencing.  I am writing you a letter because I am

01:03:19  20   frightened of Aroldo and Juana.  I am afraid of what

01:03:23  21   would happen to me or my family if they knew I was

01:03:26  22   telling you these things.  This all started when a

01:03:28  23   neighbor back in my home country told me about a man who

01:03:31  24   could take people to the United States at a price.  I

01:03:34  25   had a wife and children I was working to support at the

time.  In order to come to the United States, I had to
leave a title to some land, the only property my dad
had, and I had to pay some money.  My whole family was
living on the property I signed over to Aroldo's mother.
I hoped that I would work very hard in the United States
to get a home for my family and for my father.  That was
not possible in my home country, but it would be
possible in the United States.  I had no idea that I
would be charged so much money and work so long to pay
off the debt.  After coming to the United States, I was
not allowed to talk to my family for at least four
months, when I was finally able to talk to my wife, she
was upset because I was not sending money to help my
family, but I could not send them money.  All my money
was going to Aroldo.  I could not ask Aroldo for money.
I was very fearful to ask him for a card to make a phone
call.  Asking him for money was out of the question.  I
was frightened of Aroldo.  He was not someone you wanted
to upset.  He would tell me that I could try to run away
from him, and I might even get away, but my family will
never be safe.

              "I paid Aroldo for over two years working at
various egg farms.  It was the same thing at every farm.
They would bring in people with no papers, so they could
pay them very little.  Then Aroldo would take all of our

01:04:51  1  checks in big stacks and cash them.  We got nothing for

01:04:55  2  our work.  When Aroldo went back to Guatemala, that's

01:04:59  3  when a woman we knew as Juana took charge.  She was just

01:05:03  4  like her Aroldo.  She would take our checks and not give

01:05:06  5  us enough food.  I know now that Juana's real name is

01:05:10  6  Angelica."

01:05:10  7          THE COURT:  I now know that?

01:05:12  8          MS. MULHAUSER:  "I now know that Juana's

01:05:17  9  real name is Angelica.

01:05:18  10          "In the egg farm I had to work very hard for

01:05:21  11  long hours six days a week.  I had to sweep between the

01:05:24  12  rows of cages and shovel and scrape under the cages.  I

01:05:27  13  would feed the chickens and mop and clean the floors.

01:05:30  14  If I did something wrong or the people who watched us

01:05:33  15  decided that I made a mistake, I would be punished.

01:05:36  16  Sometimes they would not give me time to stop and eat;

01:05:38  17  other times they would put me in the basement and make

01:05:41  18  me carry a big container full of liquid to spray down

01:05:44  19  the chicken poop to kill the bugs.  I remember breaking

01:05:47  20  down in tears in the basement wondering what I was going

01:05:50  21  to do.  We stayed in trailers when we worked in the egg

01:05:53  22  farm.  I only had a few sets of clothes to wear.  I did

01:05:56  23  not have a coat for the winter.  The trailers were very

01:06:00  24  small.  We would leave for work at 5:30 in the morning

01:06:03  25  be there until 5:30 in the evening and only got a little

01:06:07  1   to eat during the day.  I remember asking neighbors at

01:06:10  2   the trailer park for food because we were so hungry.  I

01:06:12  3   was out of contact with my family for a long time.  I

01:06:16  4   did not have money to send them.  I do not know how they

01:06:19  5   made it without any money from me.

01:06:20  6           "I only got my father's land back because a

01:06:24  7   man in my home country helped my family fight for it.

01:06:28  8   This was a hard time for my family.  Thinking about all

01:06:30  9   the time I spent under the control of these people makes

01:06:32  10  me very sad.  I did not do anything to deserve this.  I

01:06:35  11  just wanted to help my family.  I had big dreams, and

01:06:39  12  none of them have come true.  It has been very difficult

01:06:42  13  for me to be away from my family this long.  I declare

01:06:45  14  under penalty of law that the above information is true

01:06:48  15  and correct."

01:06:48  16          THE COURT:  How does that affect the

01:06:50  17  guideline calculation with regard to that enhancement?

01:06:52  18          MS. MULHAUSER:  Your Honor, there is a

01:06:53  19  sentence in the beginning of the fourth paragraph that

01:06:55  20  said, "I paid Aroldo for over two years working at

01:06:58  21  various egg farms."

01:06:59  22          THE COURT:  That supports a higher level

01:07:01  23  enhancement?

01:07:02  24          MS. MULHAUSER:  Your Honor, we do not argue

01:07:03  25  for a higher level of enhancement.

01:07:05  1        THE COURT:  I understand.  I'm asking

01:07:06  2   directly:  Is it your understanding of the guidelines

01:07:08  3   that that would, if found to be correct --

01:07:11  4        MS. MULHAUSER:  If two years was found to be

01:07:14  5   the correct period, then yes.

01:07:16  6        THE COURT:  That's all.  Just tell me what

01:07:18  7   the guideline range is.  One second.

01:07:36  8        Mr. Klucas?

01:07:37  9        MR. KLUCAS:  Once again, Judge, I'm going to

01:07:39  10  ask the Court to accept the parameters agreed to by the

01:07:42  11  parties within the context of the Plea Agreement.  I

01:07:45  12  would confirm what Ms. Mulhauser says; there is a one

01:07:51  13  level Base Offense Level difference between what was

01:07:53  14  contemplated in the plea agreement and what was set

01:07:57  15  forth in the Presentence Report, and I would ask the

01:08:02  16  Court to follow the Plea Agreement.

01:08:03  17        THE COURT:  No, I decline to do so.  I don't

01:08:05  18  think that would reflect reality.  And I realize that

01:08:10  19  was entered into in complete good faith by the Defendant

01:08:13  20  and Government in anticipation of what reality might be.

01:08:16  21  But it's proven not to be so.  And to ignore that fact I

01:08:21  22  think would not be an appropriate exercise of my

01:08:23  23  discretion.

01:08:24  24        The next issue in terms of --

01:08:26  25        MS. MULHAUSER:  Your Honor, the next issue,

01:08:28　1　as I believe we discussed on the record, Your Honor has

01:08:31　2　found both the vulnerable victim enhancement and the

01:08:34　3　large number of victims, so the only remaining issue is

01:08:38　4　Paragraph 88, which is the --

01:08:40　5　　　　　　　THE COURT:  Which paragraph?

01:08:41　6　　　　　　　MS. MULHAUSER:  88 in the Presentence

01:08:44　7　Report, which is a one-level increase in the offense

01:08:47　8　level because of grouping.

01:09:04　9　　　　　　　THE COURT:  Mr. Klucas?

01:09:08　10　　　　　　　MR. KLUCAS:  I addressed that in my

01:09:09　11　sentencing memorandum.  We don't believe grouping

01:09:12　12　applies for the reasons we stated in our memo.

01:09:15　13　　　　　　　THE COURT:  I'm going to overrule that

01:09:16　14　objection and find that the one level increase for the

01:09:18　15　grouping computation is correct and appropriate.  So

01:09:24　16　that means that the -- excuse me, Myrna, go ahead.

01:09:30　17　　　　　　　(Discussion had off the record.)

01:10:44　18　　　　　　　THE COURT:  Counsel, my notes are confusing.

01:10:46　19　Remind me again what we started as a baseline.

01:10:49　20　　　　　　　MS. MULHAUSER:  We started at a baseline of

01:10:52　21　34, plus two for the dangerous weapon, plus one for the

01:10:56　22　length of peonage, plus one for grouping, brings us to a

01:10:59　23　38 before acceptance of responsibility.

01:11:05　24　　　　　　　THE COURT:  Mr. Klucas, would you agree with

01:11:07　25　that computation of the Base Offense Level?

01:11:09  1          MR. KLUCAS:  Without waiving our objections,

01:11:10  2   I would certainly agree.

01:11:12  3          THE COURT:  Let's talk about acceptance.

01:11:21  4          I have a document that indicates to me that

01:11:25  5   to some extent at least the properties which were taken

01:11:31  6   from the families have been or appear to be in the

01:11:35  7   process of being returned.  I think that's correct.  Let

01:11:39  8   me just check my copy.  I'm looking at page -- they're

01:11:54  9   unnumbered.  It would be the section that's headed

01:12:01  10  following, the answers that are of interest of the

01:12:08  11  Court.  And Roman numeral small number ii, that

01:12:20  12  Defendant has yet to receive from this Defendant's

01:12:25  13  Guatemalan attorney the registered deed.  Apparently

01:12:29  14  there is a distinction in Guatemala between a registered

01:12:33  15  and unregistered deed.  Mr. Klucas, do you know anything

01:12:36  16  about what's going on in that regard?  There are two or

01:12:39  17  three people in that situation where they -- things

01:12:42  18  appear to be underway, but the circle has not been fully

01:12:47  19  completed.

01:12:47  20         MR. KLUCAS:  I can only tell the Court what

01:12:49  21  the attorney I hired in Guatemala and I surmise, which

01:12:54  22  is the attorney that handled those transfers both

01:12:58  23  originally and the return has failed to share the

01:13:02  24  urgency of the Guatemalan attorney and myself.  I will

01:13:07  25  tell you that the lawyer that handled the transfers

01:13:10  1  could not have been any less interested in talking to

01:13:13  2  me, and so I haven't really been able to get directly

01:13:17  3  with him to find out what the problem is.  I do believe

01:13:20  4  that the report authorized by Mr. Solarez [phonetically]

01:13:25  5  indicates he does haven't any reason to believe that the

01:13:27  6  transfers didn't occur, that this seems to be about the

01:13:31  7  maximum time for the registration, and that it probably

01:13:33  8  could have been sped up if people were a little more

01:13:38  9  aware of the urgency.  And that's about all the insight

01:13:41  10  I can offer to the Court.

01:13:43  11          I do believe that there was a copy of the

01:13:46  12  conveyance for this particular victim provided to the

01:13:52  13  government, and I also have a copy for the Court.  I

01:13:56  14  think it's a registration/recording thing.  That's about

01:13:59  15  all I can tell you.

01:14:00  16          THE COURT:  Okay.  Let me hold for a

01:14:04  17  moment -- I mean, that's the government's concern,

01:14:07  18  right?

01:14:09  19          MS. MULHAUSER:  The Government has a number

01:14:10  20  of concerns, Your Honor.

01:14:12  21          THE COURT:  Why don't you go ahead.

01:14:16  22          Express them to me, and then I want -- I'm

01:14:20  23  going to wait in terms of the allocution to determine

01:14:23  24  whether or not I find acceptance, okay.  Let's at least

01:14:27  25  get this part of the record and your concerns before me.

01:14:32 1          MS. MULHAUSER:  Thank you, Your Honor.  I

01:14:33 2    will start with broader concerns and go to smaller

01:14:35 3    concerns.

01:14:36 4          So if you look at big number 3 on this

01:14:41 5    document, it lists ten victims whose names were there

01:14:48 6    for the lawyer to talk to.  Now, the Government alone

01:14:51 7    has received more deeds than that, so why there were not

01:14:55 8    more -- the rest of those victims were not on that list,

01:14:59 9    that is our first question we don't know.

01:15:01 10          The second is our concern --

01:15:03 11          THE COURT:  Are those returned deeds or

01:15:05 12    deeds -- what's the status of the Government's --

01:15:08 13          MS. MULHAUSER:  So that is part of the

01:15:10 14    challenge, Your Honor.  We went through the 13 deeds

01:15:12 15    that we received.  And of those deeds, it appears that

01:15:15 16    ten of them were at least on paper signed back to their

01:15:18 17    original owners.  Three of them -- three or four of them

01:15:23 18    were not.  We have offered those names to Defendant.  I

01:15:27 19    actually believe I've identified a fourth one in the

01:15:30 20    letter that is dated June 10, 2016.  We note the names

01:15:35 21    of those three deeds, and we explain to the Defendant

01:15:37 22    that there is nothing on those deeds showing that they

01:15:40 23    were, in fact, signed over by Defendant.  They merely

01:15:42 24    show that the -- that they were signed over to victims;

01:15:46 25    they show they are still in the possession of the

```
01:15:49   1    Defendant.  We let defense counsel know that we were
01:15:51   2    concerned about that.  We have not heard progress about
01:15:54   3    that.  And, in fact, of those names that we list, not
01:15:59   4    all of them were even on the list to be interviewed.
01:16:03   5    And the other ones were on the list but were living,
01:16:06   6    according to this, in too remote a province for the
01:16:11   7    lawyer to be able to speak with them.  So of these three
01:16:13   8    or four that are not transferred back, we don't have any
01:16:18   9    discussion or talk with those victims.
01:16:20  10             THE COURT:  We have no confirmation that the
01:16:23  11    deeds, in fact, have been returned?
01:16:25  12             MS. MULHAUSER:  No.  We have concerns
01:16:27  13    about -- we respect the efforts the Defense Counsel went
01:16:32  14    to, and we understand he went to great efforts; however,
01:16:35  15    part of what these victims were asked, as Your Honor
01:16:39  16    knows, we have gone to great length to protect the
01:16:41  17    victims the and their identity.  So why it is -- I'm
01:16:44  18    looking at page 2 of this document -- they were asked to
01:16:47  19    give a brief deposition -- a brief deposition of their
01:16:50  20    involvement with the Defendant, which is very concerning
01:16:52  21    to us, why a representative of the Defendant who was,
01:16:56  22    according to this, putting himself --
01:16:58  23             THE COURT:  I don't mean to interrupt.  I
01:17:01  24    can only assume that nothing untoward may have resulted
01:17:07  25    in that situation.  I know that -- I have the impression
```

01:17:10  1  Mr. Klucas had a number of conversations with this

01:17:17  2  individual, and I think we have to accept that -- it

01:17:24  3  might possibly be part of the protocol and procedure

01:17:29  4  that that occurs. I don't know. I don't -- I do not

01:17:33  5  apprehend a spillover was to the victims for whatever it

01:17:39  6  is or may have learned. I may be giving too much

01:17:42  7  credence to the integrity of the lawyer, but I have no

01:17:49  8  way of knowing, so I think it's fair to credit him with

01:17:52  9  having acted honestly and in good faith. I don't think

01:17:56  10  we can do any more than that.

01:17:57  11          MS. MULHAUSER: We will do that, Your Honor.

01:17:58  12          So that leaves us, of the 13 deeds we

01:18:02  13  received, there were several who were not attempted to

01:18:04  14  be interviewed. There were several who were identified

01:18:06  15  but lived too far away. So that leaves seven who were

01:18:10  16  interviewed. Of those seven, three of them either had

01:18:13  17  not received their deed back or had received a copy.

01:18:16  18  And in one case -- I'm looking at small Roman numeral

01:18:22  19  vi -- there's a claim that the document was sent by mail

01:18:26  20  to a party unknown to him in the United States and that

01:18:29  21  he is under the impression that maybe the original

01:18:32  22  document will be returned to him -- will not be returned

01:18:35  23  to him until he pays the balance of his debt, which

01:18:38  24  still stands at a high number.

01:18:41  25          Your Honor, when you combine that with the

| | | |
|---|---|---|
| 01:18:43 | 1 | sentence at the bottom of that page where the |
| 01:18:46 | 2 | investigator acknowledges that there are some |
| 01:18:50 | 3 | individuals that said they were charged by the |
| 01:18:52 | 4 | Defendant's collectors in a violent manner, the |
| 01:18:57 | 5 | Government still has concerns. |
| 01:19:00 | 6 | THE COURT:  Mr. Klucas? |
| 01:19:02 | 7 | MR. KLUCAS:  Thank you, Judge.  Despite my |
| 01:19:05 | 8 | best efforts at clarity in my instructions to people in |
| 01:19:12 | 9 | Guatemala, I have XXXXXX deed. |
| 01:19:18 | 10 | MS. MULHAUSER:  Your Honor, may we move that |
| 01:19:21 | 11 | any names be retroactively put under seal? |
| 01:19:24 | 12 | THE COURT:  I agree. |
| 01:19:25 | 13 | MR. KLUCAS:  We have the disputed deed that |
| 01:19:28 | 14 | the Government just referred to where it had been sent |
| 01:19:30 | 15 | to a party in America.  That party would be me. |
| 01:19:33 | 16 | THE COURT:  Pardon me? |
| 01:19:34 | 17 | MR. KLUCAS:  That party would be me, and I |
| 01:19:36 | 18 | have it.  And I'm trying to figure out with my fellow in |
| 01:19:41 | 19 | Guatemala what to do with it because I don't I want it. |
| 01:19:44 | 20 | But the transfer has certainly been completed.  I asked |
| 01:19:48 | 21 | our expert to take every conceivable step that he could |
| 01:19:52 | 22 | to confirm conveyances to all of the people with whom I |
| 01:19:56 | 23 | was aware.  And I think it's important to note that the |
| 01:20:00 | 24 | expert that I hired generally works on behalf of |
| 01:20:03 | 25 | victims.  And I thought that given that background he |

01:20:06  1   would be ideal for the job that I needed.  And he has

01:20:11  2   given me zero indication that the conveyances have not

01:20:16  3   occurred.  The only question is that some of the

01:20:20  4   registrations haven't been completed yet.

01:20:26  5           THE COURT:  Let me say this.  I'm going to

01:20:28  6   accept that, to the extent feasible under all the

01:20:32  7   circumstances, efforts have been undertaken in good

01:20:38  8   faith to retrieve the properties.  To the extent that

01:20:41  9   that has not been accomplished completely, I can't

01:20:48  10  really say one way or the other.  So despite the partial

01:20:55  11  nature of what we had all hoped would be accomplished, I

01:20:59  12  can't say that it won't be accomplished, I can't say

01:21:02  13  that it will be accomplished.  So at least that effort

01:21:07  14  has been undertaken, and at least to the extent it has

01:21:10  15  been accomplished, those victims' families would appear

01:21:14  16  at least for now to be better off than they would have

01:21:19  17  been otherwise.

01:21:20  18          MR. KLUCAS:  That's fair enough.

01:21:27  19          THE COURT:  So in any event I'm still

01:21:29  20  withholding the assessment on the acceptance.  I think

01:21:33  21  that's appropriate.  I did review with your client

01:21:38  22  whether he, in fact -- you had the Presentence Report,

01:21:44  23  you reviewed it with him in Spanish?

01:21:46  24          MR. KLUCAS:  I don't know that you've asked

01:21:48  25  him yet this morning, but we certainly did; on two

01:21:51   1    different occasions, actually.

01:21:52   2          THE COURT:  That's fine.

01:21:54   3          Is that correct, sir  --

01:21:56   4          THE DEFENDANT:  Yes.

01:21:59   5          THE COURT:  -- that your lawyer reviewed?

01:22:00   6          THE DEFENDANT:  Yes.

01:22:00   7          THE COURT:  Are you fully satisfied that

01:22:02   8    your lawyer has done all that he needs to have done to

01:22:06   9    have prepared both him and you for today's proceeding?

01:22:11  10          THE DEFENDANT:  Yes, sir.

01:22:19  11          THE COURT:  So at present -- hold on a

01:22:33  12    second.

01:22:35  13          (Discussion had off the record.)

01:23:18  14          THE COURT:  Myrna calculates at this point

01:23:22  15    in light of the rulings I've made so far the base

01:23:25  16    offense level is a 37.  That includes acceptance of

01:23:30  17    responsibility, which I'm reserving judgment on.

01:23:34  18          MS. MULHAUSER:  Your Honor, that's not the

01:23:35  19    calculation that we have.  The government has before

01:23:38  20    acceptance a 38.

01:23:40  21          THE COURT:  Before acceptance?

01:23:42  22          MR. KLUCAS:  Right.

01:23:45  23          THE COURT:  And did that include the

01:23:47  24    grouping point as well?

01:23:48  25          MS. MULHAUSER:  That included the grouping

01:23:49  1  point.

01:23:50  2          THE COURT:  I am willing -- it's extremely

01:23:53  3  confusing.  And I'm willing to accept the Government's

01:23:56  4  representation that that is the baseline -- with

01:24:02  5  acceptance, you said?

01:24:03  6          MS. MULHAUSER:  Before acceptance.

01:24:05  7          THE COURT:  Before acceptance.

01:24:07  8          MS. MULHAUSER:  38 before acceptance.

01:24:14  9          It does encompass our discussions at sidebar

01:24:17 10  as well.

01:24:18 11          THE COURT:  It does?

01:24:20 12          MS. MULHAUSER:  It does.  Yes.

01:24:20 13          THE COURT:  So that is coming in --

01:24:23 14          MS. MULHAUSER:  So a 38, which is everything

01:24:26 15  except acceptance of responsibility.

01:24:28 16          THE COURT:  So 38 minus three for

01:24:33 17  acceptance, which would be a 35 if I grant acceptance;

01:24:38 18  is that correct?

01:24:38 19          MS. MULHAUSER:  That is how the Government

01:24:39 20  calculates it.

01:24:41 21          THE COURT:  Mr. Klucas, would you agree with

01:24:43 22  that?

01:24:44 23          MR. KLUCAS:  I would, yeah.  But again --

01:24:46 24          THE COURT:  Without waiving your objections.

01:24:48 25          MR. KLUCAS:  Yes.

01:24:48  1          THE COURT:  I'm just saying taking into

01:24:50  2    account the objections.  So if it's a 38, Criminal

01:24:57  3    History Category II without acceptance, that would be

01:25:02  4    262 to 327.  And if it were a 35, Criminal History

01:25:17  5    Category II, 188 to 235.  Okay.  Okay.  On behalf of the

01:25:32  6    government, what else, if anything?

01:25:36  7          I've read the Plea Agreement.  I just can't

01:25:38  8    recall.  What else, if anything, does the Government --

01:25:41  9    does the Plea Agreement say with regard to a Guideline

01:25:44 10    Range, if anything?   In other words, I just don't

01:25:46 11    recall.

01:25:47 12          Is it the same thing in this agreement, the

01:25:51 13    same thing as the other one; namely, a range that the

01:25:53 14    parties have agreed to, they would basically direct my

01:25:58 15    attention to and argue that I should remain within?

01:26:01 16          MS. MULHAUSER:  Yes, Your Honor.  The

01:26:02 17    Government -- the Plea Agreement states that the

01:26:04 18    Government will recommend the range set out in the Plea

01:26:11 19    Agreement itself, which is a -- which ends up, if you

01:26:24 20    were to include the acceptance of responsibility, at --

01:26:32 21          THE COURT:  Mr. Klucas, can you help out?

01:26:35 22          MR. KLUCAS:  Yes, I can.  I believe we

01:26:37 23    were -- with the Plea Agreement was a stipulated Base

01:26:41 24    Offense Level before any adjustments of 32, with an

01:26:46 25    argument that the Defense lost regarding the four

01:26:49  1  additional levels for vulnerable victims, so that would

01:26:53  2  be at a 36 before acceptance and before any other

01:26:56  3  Government motion.

01:26:58  4         MS. MULHAUSER:  Your Honor, the Government

01:26:59  5  agrees.  So that means that if -- if the Court were to

01:27:03  6  grant acceptance, then that would put the defendant at a

01:27:06  7  31, and accordingly the Government would recommend the

01:27:10  8  high end of the range at 31, which is 151 months.

01:27:15  9         THE COURT:  Okay.  In other words, if I were

01:27:17  10  to remain within the Plea Agreement --

01:27:18  11         MS. MULHAUSER:  That's if you were to remain

01:27:20  12  in the Plea Agreement.  And, Your Honor, the Plea

01:27:24  13  Agreement is clear that Your Honor is not bound, only we

01:27:27  14  are bound in our recommendation.

01:27:28  15         MR. KLUCAS:  That's standard.

01:27:30  16         MS. MULHAUSER:  The only other thing that

01:27:31  17  the Government would like to do before the sentence are:

01:27:34  18  (1) Dismiss the other counts; and (2) Your Honor

01:27:37  19  received a number of victim impact statements.  We don't

01:27:42  20  want to read them all into the record.  There is one

01:27:44  21  more that we thought was making a particular impact that

01:27:47  22  we would like to read, Your Honor.

01:27:56  23         THE COURT:  Go ahead.

01:27:56  24         MS. MULHAUSER:  First the government moves

01:27:58  25  to dismiss the remaining counts against the Defendant

01:28:01  1  which are counts in the Superseding Indictment:  2, 3,

01:28:05  2  and then 5 through 11.

01:28:07  3            THE COURT:  Motion granted.

01:28:08  4            MS. MULHAUSER:  Thank you.

01:28:10  5            With Your Honor's permission, we would like

01:28:11  6  to read one more victim impact statement.

01:28:14  7            THE COURT:  Indeed.

01:28:15  8            MS. MULHAUSER:  Your Honor these are the

01:28:16  9  responses to the standard victim impact statement.

01:28:18  10           THE COURT:  I'm having a little trouble

01:28:20  11 hearing you.

01:28:21  12           MS. MULHAUSER:  I will try to enunciate

01:28:24  13 better.  Because these are the standard questions, I

01:28:28  14 will forego reading the questions.

01:28:29  15           THE COURT:  Sure.  That's fine.

01:28:31  16           MS. MULHAUSER:  The victim says, "From the

01:28:32  17 beginning, my family does not get along because my

01:28:35  18 parents separated and my father is the brother of my

01:28:39  19 uncle, Aroldo Castillo.  When my uncle arrived in

01:28:44  20 Guatemala from the United States, my parents had already

01:28:47  21 separated, and my uncle, Aroldo Castillo, started

01:28:50  22 threatening my mother's family.  In fact, he even hit

01:28:54  23 one of my uncles and other individuals who are not part

01:28:57  24 of my family, and he would humiliate people.  He was

01:28:59  25 accompanied by two men that the people said were his

01:29:02  1  bodyguards.  But when we came over to the United States

01:29:05  2  with our mother and he was in Guatemala, he would say

01:29:07  3  that whenever he got here to Ohio, he was going to come

01:29:11  4  and harm us."

01:29:11  5          THE COURT:  He was going to?

01:29:13  6          MS. MULHAUSER:  "Come and harm us.  But he

01:29:15  7  was not able to cross the border anymore.  That's why we

01:29:19  8  and our mother are all right."

01:29:23  9          This is the answer to the second question

01:29:25  10  below:  "We, along with our mother, have not suffered

01:29:27  11  any wounds from this crime.  We have not gone to any

01:29:30  12  hospitals or clinics.  We have not had any physical

01:29:33  13  wounds.  We have not been attacked.

01:29:36  14          The answer to question 3 is, "First of all,

01:29:39  15  when I arrived in the United States, I started working

01:29:42  16  at a chicken farm.  I worked there six months until all

01:29:46  17  this happened with Aroldo Castillo and the police came

01:29:50  18  into my house and took me to a hotel.  And there they

01:29:54  19  told me I didn't have to work anymore and that I had to

01:29:58  20  start going to school, and I have been going to school

01:30:00  21  for one year now."

01:30:04  22          The answer to the fourth question is, "I

01:30:06  23  want to say something here.  When I was working, they

01:30:09  24  would pay us 3.75 for one little cart, and the work is

01:30:16  25  very hard.  They had a lot of miners there, and they

01:30:19  1   didn't have papers in order to work.  And the miners

01:30:22  2   that my Uncle Aroldo brought to the United States, he

01:30:24  3   would talk to Mr. Conrado Salgado so they would have

01:30:28  4   work by the time they arrived in Ohio.  And they would

01:30:31  5   charge us between $30 and $35 a week to take us to work

01:30:34  6   and to return us home.

01:30:36  7             THE COURT:  That was a taxi fee, as it were?

01:30:40  8             MS. MULHAUSER:  Yes, Your Honor.

01:30:40  9             The only other thing I would add to this is

01:30:43  10  at the time the raid was done on the trailers, this

01:30:46  11  victim was 15 years old.

01:30:53  12            THE COURT:  Anything further on behalf of

01:30:55  13  the Government?

01:30:56  14            MS. MULHAUSER:  Nothing further, Your Honor.

01:30:57  15            THE COURT:  Mr. Klucas?

01:30:59  16            MR. KLUCAS:  Thanks, Judge.  May it please

01:31:01  17  the Court.  I've had the opportunity to sit through

01:31:06  18  everybody's sentencing.  I sat through the sentencing of

01:31:09  19  the first two defendants back in April.  I sat through

01:31:13  20  the vast majority of the earlier sentencing this

01:31:16  21  morning.  I couldn't help but noting there was an

01:31:19  22  inordinate amount of fobbing off of blame from the other

01:31:24  23  defendants.

01:31:25  24            THE COURT:  And I'm disregarding and

01:31:27  25  discounting her attribution to the Defendant.  I think

01:31:33  1  that there's ample display of his involvement in the

01:31:39  2  materials previously prepared and of which you were

01:31:42  3  aware.  He was not present to hear any of that.  I think

01:31:45  4  it would be fundamentally unfair to him for me to pay

01:31:49  5  any attention to what she said about his conduct.

01:31:52  6        MR. KLUCAS:  I appreciate that.  That's not

01:31:54  7  really why I was saying that, but I appreciate that.

01:31:57  8        I wanted to do indicate to the Court that

01:31:59  9  the expectation here this afternoon would be just the

01:32:03  10  opposite, that I expect Mr. Castillo-Serrano to stand up

01:32:07  11  in front of the Court and own his behavior, which is

01:32:10  12  something that I did not see not only this morning, but

01:32:13  13  from the other defendants.  I think it's meaningful

01:32:16  14  given the circumstances here, and I trust that the Court

01:32:19  15  will agree with my characterization after Mr.

01:32:22  16  Castillo-Serrano exercises his allocution.

01:32:26  17        We wrote a 12- or 13-page sentencing

01:32:29  18  memorandum, and I think I said most of what I needed to

01:32:31  19  say there.  I'm not going to repeat it.

01:32:35  20        It seems to me that there is some question

01:32:38  21  right now regarding the acceptance of responsibility, at

01:32:41  22  least to what extent the Court might recognize that.

01:32:43  23  The only thing that I want to add to what has already

01:32:47  24  been said is that nobody else was party to Mr.

01:32:52  25  Castillo-Serrano talking long distance to his family and

01:32:58  1   to this so-called Guatemalan lawyer indicating the

01:33:04  2   urgency, necessity, and desire for him to divest himself

01:33:09  3   of any of this property.  I was party to that.  We got a

01:33:16  4   special dispensation from the sheriff; we were able to

01:33:19  5   take a cell phone into the jail.  I heard all four

01:33:22  6   conversations.  So that if there is any residual doubt

01:33:25  7   on the part of the Judge or on the part of Your Honor as

01:33:29  8   to whether Mr. Castillo-Serrano accepts responsibility,

01:33:32  9   I hope I've been in front of this Court long enough for

01:33:35  10  my representation to have some degree of credibility.

01:33:39  11          THE COURT:  It does.  Of course it does.

01:33:41  12          MR. KLUCAS:  He was screaming.  That's all I

01:33:44  13  can tell you.

01:33:45  14          Even though at the end of the sentence Mr.

01:33:47  15  Castillo-Serrano is going to be deported, there's little

01:33:50  16  question here that a significant prison sentence is not

01:33:53  17  only going to be handed down, but is warranted.  And not

01:33:57  18  only is that necessary for the punishment of Mr.

01:33:59  19  Castillo-Serrano, but as the Court alluded to earlier

01:34:03  20  today, there's a significant deterrence factor here not

01:34:07  21  only for Mr. Castillo-Serrano, but for any others that

01:34:11  22  are interested in filling the void that it appears to me

01:34:15  23  Trillium Egg so willingly exploits.  If there was a way

01:34:20  24  for this Court to deter Trillium Egg, I'm sure that they

01:34:23  25  would.  I've been doing this work long enough to know

01:34:26  1   that for anybody to suggest that the home office didn't

01:34:29  2   know what was going on is ridiculous.

01:34:33  3          I think really where the question for

01:34:35  4   sentencing purposes is:  Where does this really fit in

01:34:39  5   the spectrum of conduct that we as a society want to

01:34:42  6   discourage.  And I know that the Government lawyers

01:34:46  7   don't really know me all that well, but Your Honor does,

01:34:49  8   and you know what the complexion of my practice is.

01:34:52  9   There's been multiple-double-digit capital defenses, and

01:34:56  10  probably 30-plus non-capital homicides, and I really

01:35:02  11  think after all these years I have a good perspective of

01:35:05  12  what's really bad.  And I think it's important for the

01:35:08  13  Court to note that I agree that this is bad.  It's not

01:35:11  14  murder sentence bad, but it is definitely bad.  And I

01:35:15  15  don't want anything that I say here this afternoon to be

01:35:17  16  perceived by the Court or the Government for that matter

01:35:20  17  as minimizing what has transpired here.

01:35:26  18         As to the last victim impact statement

01:35:28  19  alluded to, there isn't anybody that -- I don't have any

01:35:31  20  evidence of anybody physically --

01:35:35  21         THE COURT:  Apparently in one instance in

01:35:37  22  which he threatened one of the victims that if he didn't

01:35:40  23  stay in lines that were, he would shoot.

01:35:45  24         MR. KLUCAS:  I'm not sure that I would

01:35:47  25  consider that to be a credible threat.  I think what we

01:35:49   1   thought really occurred is listed in the relevant

01:35:52   2   conduct of the plea agreement.  I believe that is the

01:35:55   3   evidence with which we would --

01:35:59   4              THE COURT:  What does that say?

01:36:00   5              MR. KLUCAS:  It says he would yell at them,

01:36:04   6   demean them, threaten them.  But I don't have any

01:36:06   7   physical injury here.  And again --

01:36:09   8              THE COURT:  That is correct, except for

01:36:11   9   injuries suffered in the course of employment.

01:36:13  10              MR. KLUCAS:  I understand that.  And I

01:36:14  11   wanted to add something to that too.  That I come from,

01:36:19  12   on my father's side, a long family history of farming.

01:36:22  13   And farming is dirty and dangerous.  I'm not aware of a

01:36:27  14   farm anywhere that isn't, regardless of the context.

01:36:30  15              But that doesn't mean because there's no

01:36:32  16   actual injury that there isn't any fallout here.  And

01:36:35  17   the impact on the victims is exactly what I would have

01:36:38  18   expected.  There's nothing more impactful that has been

01:36:42  19   disclosed to the Defense, and certainly nothing less.

01:36:45  20   This is exactly what we would have expected.  These are

01:36:48  21   teenage kids; they're scared; they're uncertain; they're

01:36:52  22   in a strange land; they're not getting any money.

01:36:54  23   Totally understandable.  So to say there's no harm at

01:36:58  24   all, that's not really what we're saying.

01:37:01  25              I do want to point out to the Court that Mr.

01:37:03  1   Castillo-Serrano was in Guatemala for the last year and

01:37:07  2   a half or so of the conspiracy as pled in the

01:37:11  3   indictment.  I understand that other defendants are

01:37:15  4   saying that Mr. Castillo-Serrano was directing the show

01:37:18  5   by phone from Guatemala.  I believe that is partially

01:37:21  6   true, certainly not to the extent that those who were

01:37:25  7   looking to engage in self-preservation would suggest.

01:37:31  8   And I do want to point out a couple of things that were

01:37:33  9   reflected in -- did you number it Court's Exhibit 2, or

01:37:37  10  Court's Exhibit B, the report from this morning?  What

01:37:42  11  was it?

01:37:42  12           MS. MULHAUSER:  It was Court's Exhibit 2.

01:37:45  13           THE COURT:  Whichever, B.

01:37:53  14           MR. KLUCAS:  It's clear to me from this

01:37:55  15  report that people expected to pay out of their wages

01:37:58  16  for repayment, and that's reflected in the report.  The

01:38:02  17  people that Mr. Solarez interviewed all willingly

01:38:08  18  offered that up.  Clearly the problem is, as I indicated

01:38:12  19  to Mr. Castillo-Serrano from day one, was the exorbitant

01:38:16  20  percentage of funds taken for repayment.  But the idea

01:38:21  21  that the people that were smuggled up into America and

01:38:25  22  their families in Guatemala did not know that there were

01:38:28  23  going to be -- that that was going to be is not born out

01:38:30  24  by the interviews.  These are firsthand interviews by a

01:38:35  25  man who works for victims, which is why I hired him.  I

01:38:39  1   wanted his perspective, not somebody from the Defense.

01:38:43  2           The other thing that I thought was

01:38:45  3   interesting in the report submitted this morning is

01:38:48  4   nobody that this gentleman talked to was afraid of

01:38:53  5   retribution, revenge, or any of the things that had been

01:38:58  6   alluded to by way of some other information.

01:39:03  7           THE COURT:  I'll be quite honest.  I tend

01:39:06  8   to discount that.  I think almost every victim expressed

01:39:09  9   that apprehension.

01:39:10  10          MR. KLUCAS:  I can understand that.  And the

01:39:12  11  Court certainly will make its own credibility

01:39:15  12  assessment.  I'm pointing out that there's an interview

01:39:18  13  submitted to the Court firsthand where nobody said that.

01:39:21  14  For purposes of balance, you can make your own decision.

01:39:25  15          Last -- and I don't expect this to make a

01:39:28  16  huge difference, but I know that the Court is generally

01:39:30  17  interested in this sort of thing, which is throughout

01:39:33  18  these proceedings Mr. Castillo-Serrano had indicated a

01:39:37  19  self-reported significant problem with alcohol abuse.

01:39:41  20  We have given the Court some documentation from the

01:39:44  21  county jail indicating his participation in sober living

01:39:48  22  and an assessment of that participation by counselors at

01:39:53  23  the county jail.

01:39:55  24          I know the Court has him pegged at a

01:39:58  25  Criminal History II.  I cannot get off my opinion that

01:40:02  1    that's overstated.  He has one DUI conviction.  But I'm

01:40:06  2    not sure it's really going to make that much difference.

01:40:08  3               THE COURT:  It came in at a III, and I think

01:40:11  4    II is the correct calculation.

01:40:13  5               MR. KLUCAS:  He's been in continuous custody

01:40:16  6    since December of '14.  I would think the Court should

01:40:19  7    bear that in mind.

01:40:22  8               And I think totally understanding the

01:40:26  9    outrage that has been expressed by the Court in earlier

01:40:29  10   proceedings and in other conversations, I would just ask

01:40:33  11   the Court that in the overall context of criminal

01:40:37  12   behavior, the Court keep it in the appropriate

01:40:40  13   perspective, sentence at the low end of the guideline

01:40:43  14   range, because I believe that that really would be a

01:40:47  15   punishment commensurate with the offense to satisfy the

01:40:52  16   principles and purposes of sentencing at 18 USC,

01:40:56  17   3553(a).  Thank you.

01:41:00  18               THE COURT:  Sir, you have the right to speak

01:41:02  19   on your own behalf before I pronounce sentence.

01:41:12  20               THE DEFENDANT:  First, I apologize because I

01:41:14  21   feel very nervous.  For me this is something -- I've

01:41:22  22   never been in this trouble before.  And now I find

01:41:26  23   myself in this situation.  And I feel obligated to write

01:41:33  24   this because I feel in my mind that I'm not going to

01:41:40  25   remember what I'm planning on saying to Your Honor.

01:41:43  1          Hello, with all the respect you deserve,

01:41:50  2  Honorable Judge.  I hope that this is a good day for you

01:41:58  3  and for all the audiences accompanying us, and that God

01:42:03  4  will bless each one of you.

01:42:10  5          Seriously, Your Honor, I am totally sorry

01:42:17  6  for all of this problem that I've caused.  I give you a

01:42:25  7  big apology.  I give a big apology to the victims.

01:42:33  8          THE COURT: I didn't hear that.

01:42:33  9          THE DEFENDANT:  I give a big apology to the

01:42:35  10  victims who are my family members, my neighbors from my

01:42:44  11  same town.  They're not present here.  I personally take

01:42:56  12  all responsibility for the whole large problem I have

01:43:05  13  caused breaking the law in this country, crossing the

01:43:16  14  border with my countrymen.  The situation my in my

01:43:23  15  country is very bad.

01:43:31  16          Your Honor, I thank you for the opportunity

01:43:33  17  that you've given me, my attorney, and my family to put

01:43:40  18  things in order what was missing.  I put all of my trust

01:43:50  19  in my attorney and in my family.  I can't do very much

01:43:59  20  because I'm locked up in Lucas County.

01:44:04  21          Your Honor, I apologize for being so bold

01:44:12  22  telling you a little bit about my situation.  Sir, I

01:44:17  23  have four children, three children in Guatemala, and a

01:44:23  24  little girl who was born here in this country.  Thank

01:44:34  25  God I have both my parents alive.  But they're too

01:44:39   1   elderly.  I'll never make this mistake again, Your

01:44:54   2   Honor, and not returning to this country.

01:45:01   3               I know that my freedom is in your hands, and

01:45:07   4   I've asked God for hundreds of days to give you the

01:45:12   5   wisdom so that you can take the situation of my case.

01:45:21   6   Thank you.

01:45:21   7               THE COURT:  How old is the Defendant's

01:45:23   8   oldest child?

01:45:30   9               THE DEFENDANT:  In February he's going to

01:45:31   10   turn 18.

01:45:34   11               THE COURT:  The next oldest?

01:45:37   12               THE DEFENDANT:  Fourteen.

01:45:38   13               THE COURT:  The same age as some of the

01:45:40   14   children that you caused to endure those conditions,

01:45:44   15   right?

01:45:47   16               THE DEFENDANT:  Yes, sir.

01:45:50   17               THE COURT:  How would you have felt if you'd

01:45:54   18   entrusted your 14-year-old to someone like yourself, and

01:45:59   19   your child were put in the conditions in which you

01:46:03   20   placed the victims in this case?

01:46:14   21               THE DEFENDANT:  I would have felt bad.  And

01:46:16   22   I ask -- and I apologize largely to those people because

01:46:22   23   I made that mistake.

01:47:04   24               THE COURT:  Remind me again, counsel, where

01:47:06   25   we were without acceptance.  I made that note several

01:47:10  1   times.

01:47:10  2                   MS. MULHAUSER:  Your Honor, we were at 38

01:47:12  3   before acceptance.

01:47:24  4                   THE COURT:  I will grant acceptance.  That

01:47:27  5   will result in a guideline range of 188 to 235 months.

01:47:36  6   Mr. Klucas, anything further from your client?

01:47:38  7                   MR. KLUCAS:  No, Your Honor.  Thank you.

01:47:39  8                   THE COURT:  Counsel for the Government?

01:47:41  9                   MS. MULHAUSER:  Nothing further.

01:47:46  10                  THE COURT:  I'll impose a guideline sentence

01:47:48  11  of 188 months.  That's the low end of the guideline

01:47:51  12  range.   I think -- I certainly hope that's sufficient

01:47:54  13  but not greater than necessary to accomplish the

01:47:56  14  purposes of sentencing.  I would like, in addition to

01:48:06  15  the other matters that I've taken into consideration, I

01:48:10  16  want to read what some of the victim impact statements

01:48:13  17  that I received today attribute to this Defendant.

01:48:18  18                  This is -- I'm reading from -- the names are

01:48:44  19  redacted.  I'm sorry, I'm having some difficulty

01:48:48  20  determining which statement this is.  Let me do it this

01:48:50  21  way.  Let me tell you which number it is in the sequence

01:48:54  22  I have here.  I believe it's number 4, and it's on

01:49:35  23  page -- the portion I'm reading from is page number 3.

01:49:41  24                  "In the little bit that he," this Defendant,

01:49:45  25  "would bring me really didn't even last me the week.

| | |
|---|---|
| 01:49:52 | 1 |
| 01:49:59 | 2 |
| 01:50:05 | 3 |
| 01:50:10 | 4 |
| 01:50:20 | 5 |
| 01:50:28 | 6 |

And he charged me double what the food cost.  And besides, I was not the only one who lived with him in the trailer.  There were six of us living in the trailer that belonged to him.  I did suffer a lot from living with him in one of his trailers.  And I couldn't go live in another trailer because he threatened me, and I was putting up with living with him since I had family in Guatemala.  And when I finished paying him, he still got mad at me because I would play with my friends in the afternoon.  So then I decided to go live in another trailer that didn't belong to him.  So then he realized that I was taking my things out, so then he went and stole my car that I had because I went to live in a trailer that didn't belong to him."

The next page, "Well, the truth is that this crime has affected me a lot.  Because when I lived with Aroldo Serrano Castillo before, he sold me some counterfeit papers so that I can work.  Those counterfeit papers, he told me that I had to pay him $1,500, that I could work with those papers.  And since I couldn't say anything to him, I just had to obey and do what he told me because he had threatened and extorted me."

That was number four, I think.

The next victim's statement, page 3.  I'm

01:53:06  1  going to delete the name that's referenced in there.

01:53:10  2  "Recently" someone else, the name deleted, "was talking

01:53:22  3  to" -- excuse me.  That does not refer to this

01:53:25  4  defendant.

01:54:10  5          I think this one should be read from; it's

01:54:13  6  the last one.  It's not on the Government form.  There

01:54:16  7  are two that are kind of similar in recounting inability

01:54:20  8  to communicate with family and so forth.

01:54:23  9          MS. MULHAUSER:  The one from victim 1 that

01:54:26  10  we read earlier, Your Honor?

01:54:27  11          THE COURT:  Yes.  That is the one you read

01:54:29  12  from.  Okay.

01:54:40  13          It's the judgment of this Court the

01:54:41  14  Defendant be and hereby is committed to the Custody of

01:54:44  15  the Bureau of Prisons to serve a term of 188 months.

01:54:47  16  That is the low end of the applicable guideline range.

01:54:52  17  That will be followed -- you'll be remanded forthwith

01:54:56  18  following completion of your sentence to the custody of

01:55:01  19  Immigration and Customs Enforcement for deportation to

01:55:03  20  Guatemala.  Upon your release from custody you'll

01:55:07  21  commence serving a term of three years supervised

01:55:10  22  release, the only condition of which will be that you

01:55:12  23  not return to this country within that period.

01:55:15  24          A bit of advice and warning:  Come back,

01:55:18  25  you'll get caught, and you will be prosecuted, and you

01:55:21  1  will spend a lot more time in prison than most people

01:55:25  2  who come back after being deported.  I would imagine the

01:55:29  3  government would urge, and if I were the Judge I would

01:55:32  4  impose the maximum potential penalty for felony illegal

01:55:36  5  reentry following deportation.  Simply a bit of advice.

01:55:42  6          Early in these proceedings when you were not

01:55:45  7  present I expressed my views about the nature of the

01:55:47  8  crimes in which you were so actively engaged and for

01:55:52  9  which you were primarily responsible.  I won't repeat

01:55:58  10  all of those statements; I will, simply, however, review

01:56:04  11  the factors under Section 3553(a) that I believe justify

01:56:11  12  the sentence that I have imposed.

01:56:15  13          First is the serious nature of the offense.

01:56:20  14  I think honestly, sir, had this happened to your

01:56:24  15  14-year-old child or your 18-year-old child, you'd be

01:56:28  16  screaming in outrage that a child of yours would be

01:56:32  17  treated like this.  And yet that's how you treated the

01:56:35  18  children of others in your own hometown.  You lied to

01:56:40  19  them; you tricked them; you deceived them; you profited

01:56:46  20  from the misery in which they found themselves and the

01:56:49  21  misery and depravity into which you placed them and kept

01:56:54  22  them.  Your crimes of smuggling, your crimes of slavery,

01:57:11  23  your crimes of captivity create a picture of absolute

01:57:21  24  moral indifference to your fellow human beings.

01:57:25  25  Especially to children, at least one of whom was 14, is

01:57:31  1   that correct, and brought to this country?

01:57:32  2                   MS. MULHAUSER:  Yes, Your Honor.

01:57:33  3                   THE COURT:  Another of whom was 15; is that

01:57:36  4   correct?

01:57:36  5                   MS. MULHAUSER:  I believe there were several

01:57:38  6   at 15.

01:57:39  7                   THE COURT:  Of the ten victims noted in the

01:57:42  8   indictment, of the upwards of 35 victims total for whose

01:57:48  9   treatment under the squalid and inhumane conditions

01:57:55  10  under which you placed them, of the ten noted in the

01:57:58  11  indictment, eight were under the age of 18 when you

01:58:05  12  caused them to be brought here.  I simply cannot find

01:58:10  13  words sufficient to express how serious I think your

01:58:15  14  criminal conduct was.  It is clear to me that you

01:58:22  15  profited substantially.  It is my understanding that you

01:58:28  16  had to pay those who actually got these people across

01:58:34  17  the border, the coyotes, but I have no doubt that your

01:58:41  18  conduct generated an income substantially in excess of

01:58:45  19  what your obligations to those people were.  Even after

01:58:54  20  payment, close quote, had been received, you kept

01:58:57  21  pocketing the fruits of their labor, labor under

01:59:02  22  conditions that no person should be subjected to, much

01:59:13  23  less a child of 14 or 15.

01:59:20  24                   I hope that my sentence enhances respect for

01:59:22  25  the law and how the law treats criminals like yourself.

01:59:31  1   I believe that the sentence is just.  As I said during

01:59:39  2   the earlier proceeding, it is my fervent hope that this

01:59:43  3   sentence will serve as a deterrent to all who become

01:59:47  4   aware of it.  And I hope that the Government will see to

01:59:50  5   it that the nature of your conduct and its consequences,

01:59:53  6   both upon the victims and now upon yourself, becomes

01:59:59  7   broadly and as widely known as possible to others who

02:00:06  8   may be tempted to engage in the same kind of conduct and

02:00:11  9   to tolerate and to acquiesce and themselves to profit

02:00:16 10   from that conduct.

02:00:20 11          Mr. Klucas has speculated about who probably

02:00:24 12   profited the most.  I have no comment upon that.  I

02:00:28 13   simply note his comments.

02:00:34 14          I hope that the sentence serves as an

02:00:37 15   adequate deterrence.  I truly am troubled by the

02:00:40 16   possibility, which I think is fairly distinct, that once

02:00:43 17   you are out you may still have access to your ill-gotten

02:00:51 18   gains and income.  Unfortunately, there's nothing more I

02:00:57 19   can do about that.

02:01:02 20          I hope that the severity of the sentence

02:01:04 21   does not have a backlash effect and adversely affect

02:01:09 22   those in your hometown who you victimized and that

02:01:16 23   they're not subject to retaliation which the record

02:01:20 24   suggests you threatened from time to time to impose.

02:01:30 25   But I am trying at the very least by incapacitating you

02:01:35  1    for an extensive period of time to see to it that you

02:01:39  2    cannot directly be involved in that kind of retaliatory

02:01:43  3    conduct.  I'm also trying to protect the public to the

02:01:48  4    extent that includes, as I believe it does, others who

02:01:55  5    are being victimized in this country, to the extent they

02:01:59  6    are, in the way that you victimized your victims and how

02:02:02  7    you profited from them.  Although I rarely if ever in

02:02:10  8    the past have, except for this morning, have given a

02:02:13  9    sentence for retributive purposes, this is one of the

02:02:21  10   rare times when I think that's an entirely appropriate

02:02:26  11   consideration in determining a sentence that is

02:02:28  12   sufficient but not greater than necessary to accomplish

02:02:30  13   the purposes of sentencing.

02:02:32  14          I think those that become aware of the

02:02:34  15   nature of your conduct -- and I'm undertaking to see the

02:02:38  16   that awareness can occur by publishing for the first

02:02:41  17   time ever or making part of the open record the portions

02:02:46  18   of the Presentence Reports that detail your conduct.  I

02:02:52  19   also anticipate, unless there's an objection from the

02:02:55  20   Government, making available portions of the Factual

02:03:01  21   Basis Statement in your Plea Agreement so that the

02:03:07  22   public too can become aware of the nature of your

02:03:14  23   conduct and the extent of its depravity and inhumanity.

02:03:20  24   I think those who become aware of this sentence and my

02:03:27  25   reasons for it will agree with me that if there is a

02:03:30  1   case that requires punishment for punishment's sake to

02:03:35  2   express moral outrage that I feel and I think any

02:03:40  3   sensible rationale decent human being would feel upon

02:03:46  4   becoming aware of what you did to these young people,

02:03:50  5   they would agree that this is a case in which

02:03:55  6   retribution, punishment simply for the purpose of

02:03:59  7   punishing somebody is entirely justified and

02:04:03  8   appropriate.

02:04:12  9           I'll ask the Government if there's anything

02:04:14  10  further in light of the Section 3553(a) factors that it

02:04:18  11  believes I should express as reasons for my sentence.

02:04:23  12          MS. MULHAUSER:  Not in light of the 3553(a)

02:04:25  13  factors, but we would ask that Your Honor address

02:04:28  14  restitution and the $5,000 special assessment.  The

02:04:31  15  Government would argue that the Defendant is not

02:04:34  16  indigent and is, in fact, required the to pay that.

02:04:37  17          THE COURT:  I think there's good reason to

02:04:38  18  believe he is not.  There will be a $5,000 special

02:04:41  19  assessment.

02:04:42  20          MS. MULHAUSER:  We would also ask that he be

02:04:45  21  made jointly and severally liable for restitution.

02:04:48  22          THE COURT:  With regard to the restitution

02:04:49  23  issue, as I say, as promptly as you can, please advise

02:04:53  24  DeAnna of the amount that's due, still remains due and

02:04:57  25  owing to the victims.  Candidly, I think I'm reading

02:05:00  1   your statements, they have understated the amounts taken

02:05:04  2   from them in light of all the circumstances that are to

02:05:09  3   be observed within the Presentence Reports and the

02:05:13  4   factual basis for the pleas; but nonetheless, once

02:05:16  5   that -- you've gotten those figures --

02:05:26  6            DeAnna says the special assessment should be

02:05:28  7   $5,400.  That's what it will be.  Thank you, DeAnna.

02:05:33  8   But there will also be a joint and several obligation

02:05:36  9   for the remainder of the restitution that's due and

02:05:38  10  owing.

02:05:44  11           I think I've already indicated you will be

02:05:46  12  remanded forthwith to the custody of Immigration and

02:05:50  13  Customs Enforcement upon completion of this sentence,

02:05:53  14  which you will get credit for time served.

02:05:58  15           MS. MULHAUSER:  We would ask you to address

02:06:00  16  the appeal rights as well.

02:06:01  17           THE COURT:  You've waived, given up, your

02:06:04  18  right to appeal your conviction and your sentence except

02:06:07  19  under very limited circumstances.  You should understand

02:06:09  20  that if grounds to appeal appear to exist, discuss that

02:06:13  21  with Mr. Klucas.  If you do desire to file a notice of

02:06:16  22  appeal, you must do so within 14 days of the entry by me

02:06:20  23  of my judgment, which will occur today or tomorrow.  You

02:06:24  24  should also understand that if you file a notice of

02:06:27  25  appeal in violation of your promise not to do so in the

02:06:31 1   plea agreement, the Government is not bound by any

02:06:34 2   promises or commitments it has made to you at any time

02:06:38 3   whatsoever and that it can resume prosecution of all

02:06:43 4   counts as charged in the superseding indictment, and I

02:06:46 5   would expect that is what it would do.

02:06:52 6          Does either party have any objection to any

02:06:55 7   part of these proceedings not previously made?

02:06:57 8          MS. MULHAUSER:  The Government does not.

02:06:58 9          MR. KLUCAS:  Nor does the Defense.

02:07:00 10         THE COURT:  Okay.  That will conclude these

02:07:13 11  proceedings.

02:07:27 12         (Concluded at 1:40 p.m.)

13                        - - -

14

15               **C E R T I F I C A T E**

16

17     I certify that the foregoing is a correct transcript

18  from the record of proceedings in the above-entitled

19  matter.

20

21  /s/ Tracy L. McGurk_____           ___8/11/16___

22  Tracy L. McGurk, RMR, CRR                  Date

02:08:00 23

02:08:00 24

25