```
 1                  UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF OHIO
 2                       WESTERN DIVISION

 3    UNITED STATES OF AMERICA,       Docket No. 3:15CR24

 4             Plaintiffs,            Toledo, Ohio

 5             v.                     April 11, 2016

 6    AROLDO RIGOBERTO CASTILLO-SERRANO,

 7             Defendants.

 8    ------------------------------

 9                  TRANSCRIPT OF SENTENCING HEARING
                  BEFORE THE HONORABLE JAMES G. CARR
10                  UNITED STATES DISTRICT JUDGE

11

12    APPEARANCES:

13    For the Plaintiffs:  Chelsea S. Rice
                           Office of the U.S. Attorney
14                         801 Superior Avenue, W, Suite 400
                           Cleveland, Ohio 44113
15                         (216) 622-3752

16                         Dana Mulhauser
                           U.S. Department of Justice
17                         950 Pennsylvania Avenue
                           Washington, DC 20530
18                         (202) 305-0007

19

20    For the Defendant:
                           David Lee Klucas
21                         1900 Monroe Street
                           Toledo, Ohio 43624
22                         (419) 255-1102

23

24    Court Reporter:      Angela D. Nixon, RMR, CRR
                           1716 Spielbusch Avenue
25                         Toledo, Ohio 43624
                           (419) 260-5259
```

1    Proceedings recorded by mechanical stenography, transcript

2    produced by notereading.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              COURTROOM DEPUTY:  Case 3:15CR24-1, United States

 2    of America versus Aroldo Rigoberto Castillo-Serrano, matter

 3    called for sentencing.

 4              THE COURT:  Record should show defendant's

 5    present in court with his attorney, Mr. David Klucas.

 6    Government's also present through counsel, and Ms. Myrna

 7    Greenwood from the U.S. Pretrial Service and Probation

 8    office.

 9              Counsel, have you each received and reviewed the

10    Presentence Report?  If so, do you any objections other

11    than those previously raised, which I will address in a

12    moment?  If not, are you prepared to proceed with

13    sentencing?

14              MS. MULHAUSER:  No other objections on behalf of

15    the United States.  We have reviewed the Presentence Report

16    and are prepared to proceed, Your Honor.

17              THE COURT:  Record should also note that

18    Ms. Ellen Donahue, court certified interpreter, is

19    interpreting for the defendant.

20              Mr. Klucas, have you reviewed the Presentence

21    Report in Spanish with your client, I assume?

22              MR. KLUCAS:  Yes, I did.

23              THE COURT:  And Mr. Castillo-Serrano, did you go

24    over the Presentence Report with your lawyer?

25              THE DEFENDANT:  Yes.
```

1              THE COURT:  Did he explain to you what it said

2    and what it meant?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Did he answer any questions you might

5    have had about it?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Are you fully and completely

8    satisfied that he has undertaken to do all that he should

9    have undertaken to do to prepare both you and him

10   thoroughly for this morning -- this afternoon's

11   proceedings?

12             THE DEFENDANT:  Yes.

13             THE COURT:  Likewise, throughout the entire

14   course of the time that he's represented you since you were

15   arrested and charged, has he undertaken to do everything

16   that you believe he could have done and should have done to

17   inform himself about the government's case to meet with you

18   and to consult with you, to explain the government's case

19   and the law to you, and to advise you with regard to what

20   appears to be in your best interest to these proceedings?

21             THE DEFENDANT:  Yes.

22             THE COURT:  Is there anything that you told him

23   to do that he didn't do, go talk with somebody, go visit

24   someplace, look something up, file a motion or whatever,

25   any instructions or requests that he did not comply with?

1          THE DEFENDANT:  We all -- we did everything by

2   mutual agreement.

3          THE COURT:  Okay.  Likewise, was there anything

4   that you told him not to do that he went ahead and did it

5   anyway?

6          THE DEFENDANT:  No.

7          THE COURT:  Let's turn to the -- it's my

8   understanding that as presently calculated, subject to a

9   challenge enhancement which would add to the amount, if I

10  understand correctly without that enhancement the guideline

11  range, base offense level 27, criminal history category of

12  one, and that would be a range of 70 to 87 months.  There's

13  also an issue, I believe, with regard to the actual

14  criminal history category as it were, base offense level

15  27, criminal history category two being 78 to 97 months or

16  criminal history category three, 87 to 108 months.  Is that

17  correct, counsel?  Was the enhancement possibly increasing

18  it by four levels as the vulnerable victim, or have I

19  misunderstood?

20         MS. MULHAUSER:  Your Honor, we believe that the

21  sub total before any subtractions is a level 36.

22         THE COURT:  Okay.  Well --

23         MS. MULHAUSER:  And the government believes that

24  the correct criminal history calculation is a criminal

25  history level three.

```
 1            THE COURT:  Well, let's turn to the issue of the
 2    four-level enhancement for victims.
 3            Mr. Klucas, your position is that that should not
 4    be imposed; is that correct?
 5            MR. KLUCAS:  That is correct, Your Honor.  Can I
 6    ask the government for one clarification?
 7            THE COURT:  Why don't you consult with her first
 8    and then --
 9                 (Mr. Klucas and Ms. Mulhauser conferring off
10                  the record.)
11            THE COURT:  I guess there's also a question about
12    number of victims as well.  I'm sorry.  And before we
13    begin, I should have done this earlier perhaps, I want to
14    acknowledge the way in which the government has presented
15    the offense conduct.  In the narrative form, it was
16    really -- it's far more helpful to have it done that way,
17    told as a story rather than picking and choosing bits and
18    pieces from the indictment, and then as all too often done
19    in the past and as you may be aware have requested to be
20    done in the form which is done here and other reports, I
21    know it's more work for everybody, but it is very helpful
22    to me.  I am sure it's helpful to defense counsel as well
23    in preparing for these proceedings.
24            Okay.  You are -- just by paragraph, Mr. Klucas,
25    which of the proposed enhancements are you objecting to
```

1   without referencing anything else except simply by

2   paragraph?

3          MR. KLUCAS:  I would reference by paragraph in

4   the second Presentence Report, we object to paragraph 64.

5          THE COURT:  Let me make sure I've got the --

6   Myrna, can I see the -- okay.  I've got so much paper up

7   here.  Any argument in that regard?

8          MR. KLUCAS:  If I could, could I also note our

9   objection to paragraph 65 since the arguments are

10  inter-related?

11         THE COURT:  Okay.  Yeah.  Go ahead.

12         MR. KLUCAS:  Okay.  Thank you.  We had mentioned

13  this objection in our sentencing memorandum, and I want to,

14  at least for the purpose of this argument, just stand on

15  that portion of the memorandum that addresses the issues

16  raised by Johnson.  It's a -- more of a preservation matter

17  than of real substance.  The real substance argument we

18  believe is contained in the paragraphs above in the

19  sentencing memorandum in the Fifth Circuit cases which hold

20  that simply because an illegal alien is -- has illegal

21  status, that that doesn't make that victim more vulnerable

22  if illegality is a component of the offense conduct.

23  That's what the Fifth Circuit holdings says.  That's also

24  referenced in the application note of Guideline 3A1.1,

25  which says do not apply this guideline if that conduct is

1    referenced in the appropriate sentencing guideline.  And in

2    this case it does, because Guideline 2L1.1, which is what

3    applies to Count 14, certainly references that conduct.

4    Our argument is, is that enhancement does not apply because

5    the conduct that enhancement is supposed to elevate the

6    penalty for is contained within the offenses to which

7    Mr. Castillo-Serrano pled guilty.  And so we believe that

8    neither the definition of vulnerable nor the number which

9    has also been addressed in another enhancement are

10    applicable here per the directives of the Fifth Circuit,

11    and more importantly for this proceeding per the directives

12    of the guidelines themselves.  I think the guideline, given

13    all of the offenses to which Mr. Castillo-Serrano pled

14    guilty, specifically says don't apply it if it's embraced

15    in offense conduct.

16        MS. MULHAUSER:  Thank you, Your Honor.  To speak

17    briefly to Johnson first, I do not think Johnson applies in

18    this context.  The armed career criminal act residual

19    clause is a much different beast.

20        THE COURT:  I'm sorry, I didn't hear what you

21    just said.

22        MS. MULHAUSER:  The armed career criminal act is

23    a much different beast.  It is dealing with much less coy

24    conduct.  Here we are dealing with a specific provision of

25    the sentencing guidelines that have been interpreted

1    successfully multiple times by multiple courts.  We do not

2    believe Johnson applies.

3              As to the specific vulnerable victim issue,

4    leaving aside the question of whether or not the victims

5    are vulnerable as to their illegality, they are vulnerable

6    as to numerous other faculties.

7              THE COURT:  I agree.

8              MS. MULHAUSER:  I will stop there then.

9              I would also like to speak to the number of

10   victims, the vulnerable victim enhancement.  The large

11   number of victims aspect of it has been looked at by

12   numerous courts, and we have those citations in our

13   sentencing memorandum and in our objection.  I would just

14   like to point out to The Court that although we named ten

15   victims in the superseding indictment, the statute that

16   defines victims, which is 18 U.S.C. 3771, refers to victims

17   as any person directly and proximately harmed as a result

18   of the conduct.  Your Honor has heard today about parents

19   who were directly threatened, about other family members

20   who were threatened, about people who had to live as a

21   result of the defendant's conduct.  Your Honor, those

22   people are victims within the meaning of 18 U.S.C. 3771.

23   Now, we do believe, and we believe that the law supports

24   that ten victims alone is enough to make a large number,

25   but certainly, Your Honor, when we bring into account other

1    victims that are referred to in the PSR, that the defendant

2    himself refers to his own admissions of the PSR as there

3    being 35 victims, plus family members, plus the rest of it,

4    Your Honor, we believe we are safely in the category of a

5    large number of multiple victims.

6              THE COURT:  Mr. Klucas?

7              MR. KLUCAS:  We've had our word, Judge.

8              THE COURT:  I agree with the government.

9              So now on the base offense level, where does that

10   leave -- where do these rulings leave the base offense

11   level according to the government?

12             MS. MULHAUSER:  I believe that leaves us at 36,

13   Your Honor --

14             THE COURT:  Okay.  Would you agree, Mr. Klucas,

15   that --

16             MS. MULHAUSER:  -- before -- before any

17   reductions.

18             THE COURT:  I understand.

19             MR. KLUCAS:  We would agree.  Over our objection

20   we would agree.

21             THE COURT:  Counsel, if you'll just approach for

22   one minute, please.

23                  (A side bar conference was had off the

24                  record.)

25             THE COURT:  So the base offense level is, as

1    presently calculated this morning, is a 32 or 31?

2           MS. MULHAUSER:  31.

3           THE COURT:  Okay.  Now let's turn to the criminal

4    history category.  I believe Ms. Greenwood has

5    calculated -- made a note -- at a level three.

6           Mr. Klucas?

7           MR. KLUCAS:  Thank you, Judge.  With respect to

8    the criminal history category, again, we have essentially a

9    two-part argument.  The first part of the argument is that

10   the conviction for illegal re-entry referenced in paragraph

11   97 is essentially offense conduct embraced by

12   Mr. Castillo-Serrano's guilty pleas here.  He was caught,

13   as you had warned the previous two defendants, caught

14   re-entering the country in December of 2014.  He was in

15   transit to Marion, Ohio where he was going to live in the

16   trailer park and participate more directly in what was

17   transpiring.

18          THE COURT:  Basically what you're saying is in

19   order for him to accomplish his criminal purposes, he had

20   to be in this country?

21          MR. KLUCAS:  Exactly.

22          THE COURT:  Not something he can do long

23   distance.

24          MR. KLUCAS:  That's exactly --

25          THE COURT:  And this was, as I recall, within the

1    period of the criminal activity period.

2              MR. KLUCAS:  Definitely.

3              THE COURT:  Makes sense to me.  Let me hear from

4    the government.

5              MS. MULHAUSER:  Thank you, Your Honor.  This

6    conspiracy lasted for four years.  The defendant did many

7    things in those four years that were not part of the

8    conspiracy, he ate lunch, he brushed his teeth.  Not every

9    activity that the defendant engaged in during those four

10   years was part of the conspiracy.

11             Now, there is nothing in the defendant's

12   admissions of the plea, there is nothing in the PSR that

13   connects the defendant's returning to the United States to

14   his conduct.  Indeed, when he is given the chance to

15   explain his own conduct in the PSR, he does not connect

16   them.  You can see from the time period that the defendant

17   was perfectly capable of running the conspiracy from

18   Guatemala because, in fact, he did run the conspiracy from

19   Guatemala.  So given that there's no evidence on the record

20   that connects them to the United States with the operation

21   of the conspiracy, we believe it would be a mistake to

22   include that as relevant conduct part of the conspiracy.

23             THE COURT:  I would disagree.  I think Mr. Klucas

24   has the better argument.  I really do.  I think that -- I

25   understand it was the actual back and forth here and there,

1   and just seems to me that it's much more likely than not

2   that that was -- he came back here for the purpose of

3   heading back up to Marion and taking charge directly here

4   and doing things attributed to him in the Presentence

5   Report and victim impact statements.

6              So that being the case, what effect does that

7   have on the criminal history category?

8              MS. MULHAUSER:  Your Honor, we would retain our

9   objection to that.  That said, my understanding is that if

10  that was not included, the defendant would have one point

11  of criminal history -- would have three points -- I'm

12  sorry, I was -- I was looking at the -- he would have three

13  points criminal history, and therefore he would be a

14  category two.

15             THE COURT:  Okay.  Mr. Klucas, would you agree

16  with that?

17             MR. KLUCAS:  I would not, Judge.  We had

18  indicated that we had a two-part argument.  The first part

19  was about the illegal re-entry, and the second is the

20  two-point assessment for being on municipal court

21  probation.  And I guess I understand that Ms. Greenwood has

22  to do that.  I guess our argument is that that artificially

23  inflates the criminal history and doesn't provide The Court

24  with an accurate basis to assess the likelihood of future

25  offenses, the likelihood of recidivism and those portions

```
 1   of what the criminal history category is supposed to
 2   reflect.  I'm very familiar with municipal court probation.
 3   The violation I believe occurred because
 4   Mr. Castillo-Serrano had returned to Guatemala, did not
 5   answer a summons from the Marion Municipal Court and
 6   probation was terminated.  I think that probation is
 7   attendant to his OVI conviction.  I don't think that it's
 8   necessary for The Court to make an accurate assessment as
 9   to whether Mr. Castillo-Serrano has the requisite criminal
10   history to justify a higher categorization, and we'd ask
11   The Court to categorize Mr. Castillo-Serrano as criminal
12   history one for the one point for his municipal court
13   probation.
14           MS. MULHAUSER:  May we have a brief moment with
15   The Court and counsel?
16           THE COURT:  Candidly, I -- for whatever it's
17   worth, I disagree with Mr. Klucas.  I think the guideline
18   range is appropriately calculated with regard to criminal
19   history.
20           MS. MULHAUSER:  Your Honor, we would ask that
21   Mr. Klucas withdraw his comments because they are in
22   violation of the plea agreement, paragraph 14, that says
23   neither party will recommend or suggest in any way
24   departure or variance is appropriate.  So we would ask that
25   Mr. Klucas withdraw his comments as not in conformance
```

1   with --

2           THE COURT:  I don't find that to be -- I think

3   he's --

4           MR. KLUCAS:  There's --

5           THE COURT:  Also I think it's fair to say I

6   suspect there have been occasions in the past couple

7   decades you've been in front of me --

8           MR. KLUCAS:  A few.

9           THE COURT:  -- where you've heard me basically

10  toss that one out.

11          MR. KLUCAS:  Correct.

12          THE COURT:  And I think he was relying on -- more

13  upon his experience with me rather than trampling on the

14  plea agreement, so I'm going to -- I'm overruling the

15  objection.  I think it's appropriately calculated, all

16  things considered, the fact that he went back to Guatemala,

17  probably I think it's fair to infer at least, I'm not

18  finding, but it's quite likely that he went back there in

19  furtherance of these criminal activities.  Presentence

20  Report indicates, again subject to hearing from him and his

21  lawyer, that to some extent, the overall conspiracy was

22  facilitated by conduct in Guatemala.  So I'm going to keep

23  it at criminal history category two, fairly and accurately

24  reflects his past criminal conduct and characteristic.

25          So that being said, base offense level of 31, if

1    memory serves -- it's been a long day.

2            MS. MULHAUSER:  31, category two, Your Honor, is

3    121 to 151 months.

4            THE COURT:  Guideline range of 121 to 151 months.

5            Now, I should indicate that -- a couple things I

6    want to say.  My understanding from counsel is that -- that

7    I heard this morning, is that deeds were -- what we call

8    deeds, conveyances of some sort of real property were taken

9    by or on behalf of this defendant to secure his payment --

10   payment of the, quote, smuggling fee, which at least

11   there's one reference which indicates it was $15,000, we've

12   heard this morning 500 and 500 hundred, whatever it was.

13   It's my understanding that the government has asked the

14   defendant, and I want him to listen very carefully to what

15   I'm about to say, it's my understanding that although the

16   government has called upon this defendant to return those

17   conveyances, he has not done so.  And in my view, that

18   places in jeopardy whether he should receive credit for

19   acceptance of responsibility.  I'm going to continue this

20   matter for six weeks.  I expect the defendant will cause

21   directly or indirectly to have each and every conveyance of

22   any kind whatsoever with regard to any property whatsoever,

23   whether located in Guatemala or in this country or

24   elsewhere, to be returned to the United States Attorney's

25   Office.  Otherwise, the purpose of the prosecution and

1  conviction and the sentencing will be frustrated because

2  that would leave the opportunity open for this defendant

3  and others to profit from the crimes which he has committed

4  and to which he has pled guilty.

5        If that does not happen, quite candidly, sir, I

6  am going to ask how high is up in sentencing.  It's my

7  understanding that as to each count of conviction, the

8  maximum potential sentence is 20 years; is that correct?

9        MS. MULHAUSER:  For the trafficking counts, Your

10  Honor, yes.

11        THE COURT:  Yes.  I would also consider seriously

12  running every sentence consecutive.  And at this point,

13  unless that happens, or if it does not happen I have an

14  adequate explanation of why it does not happen, at this

15  point, subject to hearing from counsel and you, I will

16  consider such a sentence to be sufficient but not greater

17  than necessary to accomplish the purposes of sentencing and

18  to see to it that nobody profits in any way whatsoever from

19  the crimes that you committed.

20        If I have not made clear already, which I think I

21  have, I find your conduct as portrayed to me so far, I

22  realize I have not heard from you, and I will, and I will

23  listen to you, but as portrayed to me so far, it is

24  reprehensible, aberrant and inhumane.

25        I'll tell you what came to mind when I read that

 1   victim impact statement which was repeated here today about

 2   the dilapidated condition of the trailers, no heat, no

 3   beds, lack of food, lack of sanitary facilities, inflicted

 4   upon children, what came to mind was a book I read 20 or 30

 5   years ago by a Russian author, Aleksandr Solzhenitsyn,

 6   called The Gulag Archipelago, the conditions in which

 7   people were placed by the communist regime in Siberia, as I

 8   read the Presentence Report, you helped to replicate and to

 9   continue.  So you had better do what you can to retrieve

10   each and every one of those conveyances, because if you do

11   not, do not come in front of me asking for a single shred

12   of leniency, because to do otherwise would put you in a

13   position of continuing to profit from the conduct which has

14   brought you here.  I'll leave it to you and your lawyer to

15   discuss any questions you may have, or whatever you can do

16   to avoid that outcome.  I think Mr. Klucas would probably

17   tell you that on the whole I'm a lenient sentencer.  I look

18   the best I can for the redemptive qualities that each and

19   every defendant who comes before me may be able to display

20   to me, and I take those into every consideration in every

21   case.  But upon learning that those conveyances have not

22   been returned, that they are still in either your

23   possession or possession of what we call constructively,

24   that is the possession of people who were, in effect,

25   holding them for you, I want you to know plainly, clearly

1    and unequivocally my response to that, let there be no

2    doubt about that.

3           THE DEFENDANT:  Can I say something?

4           MR. KLUCAS:  No.

5           THE COURT:  I told your lawyer that he is

6    welcome, at the expense of the United States Government, to

7    employ counsel to assist you and him in seeing to it that

8    that happens, counsel in Guatemala, and I expect that that

9    will be accomplished.

10          MS. MULHAUSER:  Your Honor, may I offer one point

11   on this?

12          THE COURT:  Sure.

13          MS. MULHAUSER:  The deeds have, in fact, been

14   signed over to Mr. Castillo-Serrano and his relatives, so

15   in addition to physically providing them, part of the

16   process in order to get them back has to be signing them

17   back over to their original owners.

18          THE COURT:  Absolutely.  If the government is in

19   any way dissatisfied, in any way whatsoever, I expect to

20   hear from them at sentencing.

21          MS. MULHAUSER:  Your Honor, it's our

22   understanding that Mr. Castillo-Serano has previously

23   employed lawyers to help him transfer those deeds to his

24   relatives, so we anticipate he will not have a hard time

25   finding lawyers to transfer them back.

```
 1            THE COURT:  Well, I've made my point clear.  He
 2   will either continue to try to hang on to those assets, but
 3   it will be a long time before he at least himself benefits
 4   from them.  I just want to make it clear.  Again,
 5   Mr. Klucas I'm sure will tell his client, you've never been
 6   in front of me before, but I think it's crucial and fair to
 7   both parties at the outset to let people know what I am
 8   thinking so that they can address a sitting rather than a
 9   hidden or moving target, and that's exactly what I'm doing
10   now.  I have not made my mind up in terms of sentencing,
11   but the defendant is in a position to avoid a much more
12   severe outcome than otherwise is likely to be the case if
13   he complies with your request on behalf of the victims and
14   their families to do the right thing and to divest himself
15   and anybody else who may have any interest of any kind
16   whatsoever, through whatever means and device whatsoever in
17   any property in Guatemala or elsewhere that was acquired
18   during the course of, or in furtherance of the crimes that
19   he has committed.
20            That will be set for six weeks from today at
21   10:00 a.m.  What -- what suits your convenience and saves
22   the government a little bit of money for them coming, noon
23   or 11?
24            MS. MULHAUSER:  Honestly if it is not a Monday,
25   that is helpful.  Otherwise, we are flexible, your Honor --
```

```
 1              THE COURT:  Six weeks is Memorial Day.

 2              MS. MULHAUSER:  We would actually like to make a

 3    proposal, there is another co-defendant in this case who is

 4    scheduled to be sentenced on June 27th.  We would propose

 5    combining those two things.

 6              THE COURT:  I would prefer that.

 7              MR. KLUCAS:  Can I look before I make a promise

 8    that I can't keep, please?

 9              THE COURT:  Counsel, I do these on Mondays.

10              MS. MULHAUSER:  That's all right.  Thank you.

11              THE COURT:  I can make it 11:00 or noon.  It's my

12    money I'm trying to save.

13              MS. MULHAUSER:  I appreciate that.  I do.

14              THE COURT:  Especially with what has to happen on

15    Friday.

16              MR. KLUCAS:  June 27th is good for the defendant.

17              THE COURT:  27th?

18              MR. KLUCAS:  27th, yeah.

19              THE COURT:  Okay, at 10:30?

20              MR. KLUCAS:  That's fine.

21              MS. MULHAUSER:  Would Your Honor prefer to

22    address the other financial restitution and the fines now

23    or --

24              THE COURT:  No, I'll do that at the time of

25    sentencing.  Basically what I've done is two things, one is
```

1    to resolve the objections and reach the current base

2    offense level and criminal history category, which, of

3    course, includes acceptance of responsibility.

4            Number two, I've tried to communicate to the

5    defendant as forcefully and as clearly and as plainly as I

6    could, what I expect him to be doing between now and then

7    to the government's satisfaction and my own and what will

8    happen if that doesn't happen.

9            Again, I'm not indicating what sentence I will

10   impose, it's just that I would expect that the sentence

11   that he does get will be severe and potentially

12   substantially more severe if he has failed to comply with

13   that request.  It's up to him.

14           MS. MULHAUSER:  Thank you, Your Honor.

15           THE COURT:  Thank you, counsel.  Anything further

16   from the government?

17           MS. MULHAUSER:  Nothing further.

18           MR. KLUCAS:  Not from the defendant.

19           THE COURT:  Thank you.  That will conclude this

20   proceeding.

21

22

23

24

25

```
1                    C E R T I F I C A T E

2

3           I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled matter.

5

6    s:/Angela D. Nixon

7    --------------------------              -----------

8    Angela D. Nixon, RMR, CRR              Date

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```