# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# WESTERN DIVISION

Aroldo Rigoberto Castillo-Serrano,  Case No. 3:15CR24

    Movant/Defendant

v.  **ORDER**

United States of America,

    Respondent/Plaintiff

    This is a federal prisoner's collateral attack under 28 U.S.C. § 2255.

    Defendant Aroldo Rigoberto Castillo-Serrano pleaded guilty to forced-labor conspiracy, forced labor, witness tampering, and harboring. After two days of hearings, I sentenced the defendant to 188 months of imprisonment. He did not take a direct appeal.

    In his motion to vacate, Castillo-Serrano argues that trial counsel was ineffective because counsel: 1) advised Castillo-Serrano that he would receive a sentence between 63 and 78 months of imprisonment; 2) allowed Castillo-Serrano to plead guilty to conspiracy, even though he is innocent of that offense; and 3) failed to object to certain sentencing enhancements. (Doc. 140–1 at 3–7, 8–9).

    Castillo-Serrano also alleges that his plea was involuntary. (*Id.* at 7).

    For the following reasons, I deny the motion and decline to issue a certificate of appealability.

**Discussion**

To prevail on an ineffective-assistance claim, the defendant must "show both that his counsel provided deficient assistance and that there was prejudice as a result." *Harrington v. Richter*, 562 U.S. 86, 104 (2011).

The performance prong calls for "an inquiry into the objective reasonableness of counsel's performance, not counsel's subjective state of mind." *Id.* My review of counsel's performance is highly deferential, and I am "required not simply to give [counsel] the benefit of the doubt, but to affirmatively entertain the range of possible reasons counsel may have had for proceeding as [he] did." *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011).

"With respect to prejudice, a challenger must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Harrington*, *supra*, 562 U.S. at 104.

In cases like this, where the defendant alleges that counsel was ineffective in advising him to plead guilty, the defendant must show that, but for counsel's deficient performance, there was a reasonable probability that he would have stood trial and not pleaded guilty. *Lafler v. Cooper*, 566 U.S. 156 (2012); *Missouri v. Frye*, 566 U.S. 133 (2012).

**A. Promised Sentence**

Even assuming that counsel promised Castillo-Serrano that he would receive no more than a 78–month sentence, Castillo-Serrano cannot show prejudice. This is because the transcript of the change-of-plea hearing establishes that: 1) the Magistrate Judge advised him that, regardless of whatever sentence he expected me to impose, I had final authority to impose whatever sentence I

2

deemed appropriate and thus was not bound by his expectations; and 2) Castillo-Serrano testified under oath that he understood this caveat:

> The Court: I don't know what sentence Judge Carr may impose in this case. I see that you all are going through some fairly detailed recommendations to him, but those at the end are just recommendations. You have to understand that this whole thing, to some extent, is invoking the sentencing guidelines which is a grid that we go through, and we come up with enhancements and departures and credits and all of that kind of stuff. And ultimately we come up with a number, we say number is your offense level, and then there's reductions and so forth. And that comes up with a recommended sentence, but you need to understand that it is just that. It is a recommendation. And Judge Carr is not going to be bound by that even when this is all completed. Do you understand that?
>
> The Defendant: Yes.
>
> The Court: So the critical thing that you need to make sure you understand is that since none of us know what he might do in this case, the fact that he might do something different than what you expect is not going to be a basis to come back and withdraw your plea today. It might be a basis for an appeal if it's within the narrow reservation of appellate rights that you've preserved, but there will never be a reason to come back and withdraw your guilty plea. Do you understand that?
>
> The Defendant: Yes, I understand.
>
> \* \* \*
>
> The Court: And we talked about how the guideline range is advisory. We won't even be in a position to know what your final guideline range is until after something called a presentence investigative report is prepared. And the office who's preparing that, you know, looks at the totality of the circumstances, looks at your criminal history and so forth, looks at the recommendations of the parties, and then finally prepares that report and shows it to The Judge. If there are objections that either of you make, The Judge has to rule on those. Then and only then will The Judge know what the final

|               |                                                                                          |
|---------------|------------------------------------------------------------------------------------------|
|               | advisory guideline estimate is, but even then it's not binding. It's just an advisory number. |
| The Defendant: | I understand.                                                                          |
| The Court:    | So are you satisfied that you understand everything in this plea agreement, sir?          |
| The Defendant: | Yes.                                                                                   |
| The Court:    | And you've had plenty of time to talk about it with Mr. Klucas or anyone else whose advice you would desire to have before you enter into something like this? |

The Defendant: I had enough time, yeah.

(Doc. 61 at 25–26, 27–28).

Furthermore, the parties' plea agreement recited not only admonitions similar to the ones the Magistrate Judge gave, but also that Castillo-Serrano had read the entire agreement, entered it voluntarily, and denied receiving any promise or benefit for entering the guilty plea. (Doc. 57 at ¶¶14–15, 34–35).

Because the record establishes that defendant knew he was not entitled to receive a specific sentence in exchange for his plea, he cannot show prejudice from counsel's alleged promise of a 63– to 78–month sentence. *See U.S. v. Washington*, 2013 WL 8178395, *9 (E.D. Mich.) ("Thus, any prejudicial effect of trial counsel's erroneous advice [that defendant would receive a specific sentence] was cured by the information provided at the plea [that he could not expect to receive a specific sentence], and defendant's plea was not involuntary because of counsel's allegedly erroneous advice.").

4

## B. Conspiracy Charge

The transcript of the change-of-plea hearing also refutes Castillo-Serrano's claim that he is innocent of the forced-labor conspiracy charge. Indeed, he admitted – under oath – that he committed that offense. (Doc. 61 at 29–35). There was thus no basis for counsel to challenge that count, and his failure to do so was not prejudicial.

## C. Sentencing Enhancements

Nor is there any merit to Castillo-Serrano's claim that counsel should have objected to four sentencing enhancements.

### 1. Striking the Victims

First, even if Castillo-Serrano himself did not strike or threaten to strike the victims of the forced-labor operation, as he claims (Doc. 140–1 at 8), the two-level enhancement under U.S.S.G. § 2H4.1(b)(2)(B) would have been proper.

As the government explains, this enhancement rested on the conduct of Castillo-Serrano's codefendant and coconspirator Ana Pedro-Juan. Because these assaults occurred during the course of the conspiracy and were within its scope, it was appropriate to impose the two-level enhancement on Castillo-Serrano.

### 2. Holding the Victims Against Their Will

Second, the record refutes Castillo-Serrano's claim that he did not "hold anyone against their will, especially in a condition of peonage or involuntary servitude." (Doc. 140–1 at 8). When he pleaded guilty, he testified that he had "recruited and smuggled Guatemalan nationals, many of them minors, into the United States to hold them in a condition of forced labor as agricultural workers in the Marion, Ohio, area." (Doc. 61 at 29).

Because the evidence supported the enhancement, trial counsel was not ineffective for failing to oppose it.

### 3. Vulnerable Victims

Third, trial counsel was not ineffective for omitting an objection on the ground that Castillo-Serrano supposedly had "no clue the Guatemalan Nationals were vulnerable[.]" (Doc. 140–1 at 8). After all, several of the forced-labor victims were only 14 or 15; none had papers, proficiency in English, an education, or the means to support themselves in this country. This is the very definition of vulnerable.

Thus, the two-level enhancement under U.S.S.G. § 3A1.1(b)(1) was proper, and failing to object to it was not ineffective assistance.

### 4. Leadership

Fourth, the four-level leadership enhancement was proper given Castillo-Serrano's admissions that he "recruited the workers in Guatemala, promising them safe passage and remunerative work in the United States," and that he "supervised the collection of money from the workers and their families, the workers' passage to the United States, and their placement at jobs in Ohio." (Doc. 61 at 30–31).

Trial counsel, having no basis to object to the enhancement, was not ineffective for failing to raise a frivolous objection to its application.

## D. Voluntariness of the Plea

Finally, Castillo-Serrano's claim that his plea was involuntary has no merit. The claim rests on the supposed errors by defense counsel re. the expected sentence, the impropriety of certain

6

sentencing enhancements, and Castillo-Serrano's alleged innocence of the conspiracy charge. (Doc. 140–1 at 7).

But just as those errors lack any basis in the record and provide no support for Castillo-Serrano's ineffective-assistance claim, so too do they fail to support a due-process attack. The plea agreement and the transcript of the change-of-plea hearing support only one conclusion: Castillo-Serrano knowingly, voluntarily, and intelligently pleaded guilty. (Doc. 57 at ¶¶34–35; Doc. 61 at 38–39).

**Conclusion**

The record from the plea hearing and sentencing clearly and convincingly established that the defendant was the prime mover in a human-trafficking conspiracy that smuggled young men, some as young as fourteen, from a small village in Guatemala into the United States. Then he and his confederates brought them to a chicken farm in Northwest Ohio, where they worked in virtual slavery and lived in abysmally wretched and depraved conditions.

From the proof glimpsed at sentencing and recited earlier in the factual basis, the likelihood of conviction on all charges in the indictment was very great. Any suggestion that the defendant would have been better off had he stood trial would be, in a word, ridiculous.

At every step of these proceedings, from indictment through the pretrial phase and the taking of his plea and sentencing, the government, this court, and, most importantly, his attorney provided the defendant with the fullest measure of the rights and benefits to which our Constitution entitled him.

In the end, he earned and deserved the sentence he received: he is a very bad man who did unimaginably bad things for the worst motive of all – greed. He himself, and not the government, this court, or his attorney, is to blame for the bad end to which he finally, and justly, came.

Accordingly, it is hereby

ORDERED THAT:

1. The motion to vacate (Doc. 140) be, and the same hereby is, denied;

2. No certificate of appealability will issue, as the defendant's claims are frivolous and not susceptible to debate by reasonable judges; and

3. Given the frivolous nature of this motion, no appeal will be allowed absent prepayment of the filing fee. *See* 28 U.S.C. § 1915(a)(3).

So ordered.

/s/ James G. Carr
Sr. U.S. District Judge