IN THE UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF OHIO,
WESTERN DIVISION

| | |
|---|---|
| United States of America, | Case No. 3:15-cr-0024-01 |
| Plaintiff, | Judge James G. Carr |
| v. | **ORDER** |
| Aroldo Rigoberto Castillo-Serrano, | |
| Defendant. | |

Pending is the Defendant's Motion to Reduce Sentence under Amendment 821 to the Sentencing Guidelines**.** (Doc. 210). In accordance with this Court's Order, after filing the Motion *pro se,* the matter was referred to the Federal Public Defender's Office (FPD) for review. N.D. Ohio General Order 2023-20, ¶I (11/23/2023). Under this Order, the FPD has the right to file a supplemental motion in support of a *pro se* defendant's request. *Id.* ¶V. The FPD filed a Supplemental Motion under Seal (Doc. 218). The Government filed a Response in Opposition, also under Seal. (Doc. 221).

For the reasons that follow, I deny the Defendant's request for reduction under 821.

### Background

On August 24, 2015, the Defendant entered a Plea of Guilty to four Counts: Forced Labor Conspiracy, Forced Labor, Tampering with a Witness, and Encouraging Illegal Entry. (Doc.57 SEALED, Doc. 98 SEALED). After various adjustments, the Probation Officer calculated his Guideline Range to be 262 to 327 months. (Doc. 98 SEALED, pgID 553-57, 560).

Sentencing occurred on April 11, 2016, and June 27, 2016. After much deliberation and debate, granting a two-point departure, I determined his Total Offense Level to be 35 and his

Criminal History Category a II. This rendered his Guideline Range as 188 to 235 months. I sentenced him to the lowest end, all counts to run concurrently. (Doc. 126, pgID 808).

**Discussion**

In Part A of Amendment 821 to the Sentencing Guidelines, the Sentencing Commission altered the "status points" provision regarding criminal history. Under revised § 4A1.1(e), a person who otherwise presents seven or more criminal history points receives one "status" criminal history point, instead of two, while a person who otherwise presents six criminal history points or less, receives no status points.

Defendant was issued two additional status points for being under a criminal justice sentence, for a total of three points. (Doc. 136, pgID 951-56). These additional status points increased his Criminal History Category from I to II.

As counsel agree, the Defendant is technically eligible for reduction. However, the § 3553(a) factors weigh heavily against it. I wholeheartedly agree with the Government that Defendant is not worthy of benefiting from the 821 Amendment.

First, as to the Defendant's history and characteristics, he pled guilty to four counts of a serious fifteen-count indictment, alleging conspiratorial crimes that he (with the assistance of confederates) committed. Namely, the Defendants smuggled citizens of Guatemala, many of whom were minors, into the United States to work at Trillium Farms in LaRue (Marion County), Ohio. Defendant did so by making false promises to them, such as a free education, money for their families and a better life.

Instead, the victims were subjected to deplorable housing conditions (including living in trailers without utilities) and grueling working conditions.

Defendant's victims worked six to seven days a week, up to twelve hours a day. (Doc. 98 SEALED, pgID 547, 550). The work was physically demanding and often dangerous. (*Id.* at 549-52). Defendant's reaction to the victims' complaints ranged from utter indifference to subjecting them to verbal harassment and retaliatory living conditions to threats of property loss or harm to them and their family members. (*Id.* at 549-51).

Only a raid by Federal authorities resulted in their release.

Additionally, the sentence imposed reflects the extreme seriousness of the crimes. Due to Defendant's conduct, vulnerable villagers incurred substantial debts to pay Defendant and his co-conspirators to smuggle them or their loved ones into the United States under false promises.

Charging up to $15,000 per person, Defendants took property deeds as collateral for these debts. (Doc. 98 SEALED, pgID 550-51). Deeply concerned about the risk that Defendant, once released and deported, would seek to use those deeds to evict the victims' families, I postponed sentencing until the Defendant's attorney had traveled to Guatemala, secured the services of local counsel, and received assurances that, under Guatemalan law, the property transfers had been nullified.

It is my obligation to protect the public – to the extent I can – from further crimes and to afford adequate deterrence. This was not Defendant's first illegal entry. He was in the United States from 2002 until his return to Guatemala in March 2013. (Doc. 98 SEALED, pgID 547). He began his human trafficking operation in 2008 and supervised the operations while living here illegally until he returned to Guatemala. (Doc. 221 SEALED, pgID 1606-7; Doc. 98 SEALED, pgID 550-52).

Undeterred, he continued his role as leader of the smuggling operation whether in Guatemala or in the U.S., until December 17, 2014[1] by recruiting new undocumented workers and collecting substantial sums to bring them into this country for the sole purpose of exploiting them as farm workers. (Doc. 98 SEALED, pgID 546-53; Doc. 57 SEALED, pgID 209). In fact, Defendant has admitted to bringing thirty-five people into the U.S. illegally for this purpose. (*Id.*) Even worse, recruitment of minors became his focus in 2014 because he believed they would be easier to smuggle and would work harder. (*Id.*).

I turn now to consideration of the implications if I were to grant the relief Defendant requests. Candidly, I believe that the prospective danger that the Defendant would pose, if released prematurely, justifies making him serve the fully imposed sentence.

The fear that Defendant had brought to bear while the victims were in captivity continued through his sentencing. Three victims expressed a desire to testify, but ultimately refused due to apprehension and fear of acts of violence towards them and/or their families.[2] The Defendant had made clear that he was willing to injure, and even kill, family members of certain victims were they to seek relief from their confinement and abusive and health endangering working

---

[1] On January 14, 2015, Defendant was arrested in Pecos Texas, where he was serving a 90-day sentence for illegal entry. (Doc. 98, SEALED, pgID 557).

[2] I have been a Federal Judge for nearly forty-five years: first as a Magistrate Judge for fifteen years and then as a District Judge. During my tenure, the sheer inhumanity of the Defendant's actions has not been matched. I can think of one case involving a plastic surgeon, who procured prostitutes through escort services. He would drug them, rape them, and even where they had objected to being filmed, videotape his malicious actions. But even this extreme case falls short of Defendant's crimes. Those victims were adults, who knowingly undertook at least some of the risks that might have been consequent on their own decisions. The Defendant's conduct involved a far greater number of juvenile victims and their families. The criminal conduct lasted for a far longer period. And Defendant created circumstances that generated constant fear and hopelessness. To me, this conduct was even more egregious than the doctor's.

conditions. Moreover, Defendant had previously been found to have been engaging in human trafficking but was apprehended and deported back to Guatemala. That experience had absolutely no deterrent effect on his subsequent conduct.

I have no doubt that Defendant's threats to cause harm, made repeatedly to keep his victims isolated and confined to working at Trillium, were sincere. The duration and degree of Defendant's conduct – from beginning to end – convinces me that when he is finally released and deported, the victims and their families will be in danger.

About that, I can, of course, do nothing. But I can, at least, postpone that risk and those dangers. I consider it my duty to do so.

## Conclusion

Though Amendment 821 would permit the release as applied to Defendant, I have considered the § 3553(a) factors and conclude that they fully justify denial of the Defendant's Motion. To release him early, under the circumstances, would denigrate both public and private deterrence, would not be just, and would not enhance respect for the law.

For the foregoing reasons, it is hereby

ORDERED THAT:  The Defendant's Motion to Reduce Sentence (Doc. 210) be, and the same hereby is, **DENIED.**

So ordered.
Date: 10/18/2024

                                               /s/ James G. Carr
                                               Sr. U.S. District Court Judge